GEORGE F. THEDE et al., Appellants, v. MARK G. THORNBURG, Secretary of Agriculture, et al., Appellees.

FEBRUARY 5, 1929.

640

*Thompson & Thompson, A. R. Whitmer,* and *C. P. Hanley,* for appellants.

*John Fletcher,* Attorney-general, *Earl F. Wisdom,* Assistant Attorney-general, and *Marion C. Hamiel,* County Attorney, for appellees.

FAVILLE, J.—Prior to September 25, 1924, petitions were circulated in Cedar County for the enrollment of said county under the county-area-eradication plan for the eradication of bovine tuberculosis. Notice was given, and a hearing had on said petitions. Thereafter, the board of supervisors of said county made application in writing to the secretary of agriculture for the enrollment of said county under the county-area-eradication plan. The county auditor certified to the secretary of agriculture that the papers forwarded to the secretary of agriculture contained a true, correct, and complete copy of the petitions and names signed thereto. Thereupon the secretary of agriculture enrolled said county as a county-area-testing unit, and a tax was levied by the board of supervisors for carrying out the provisions of the statute for the succeeding two years. In 1926, additional petitions and agreements were filed with the county auditor for the enrollment of said county under the accredited-area plan. On July 9, 1926, the county auditor certified to the secretary of agriculture a true copy of the names on said original petitions, as filed in his office on July 2, 1926. After said list had been so certified to the secretary of agriculture, said officer caused notice to be published in two newspapers in Cedar County of a hearing to be had before him at the courthouse at Tipton, on August 5, 1926. On the date set for the hearing, the secretary of agriculture did not appear in person, but his place was taken by the head of the division of animal industry. Subsequently, the secretary of agriculture notified the county auditor of Cedar County that said county had been enrolled by him as an accredited area. Later, this action seeking an injunction to prevent further proceedings under said accredited-area plan was instituted.

I. Appellants challenge the original proceedings under which the county-area plan was adopted. The board of supervisors made its finding on the original petitions in regard to the

 enrollment of the county under the county-area-eradication plan on September 25, 1924, and it was shortly thereafter that the secretary of agriculture enrolled said county under said plan. Subsequently, the county proceeded to operate under said county-area-eradication plan until it was enrolled under the accredited-area plan. Appellants contend that the county auditor did not certify the original petitions and the signatures thereto to the secretary of agriculture as the basis for the enrollment of the county under the county-area-eradication plan, but only copies of the petitions and a certified typewritten list of the signers thereto. This was a substantial compliance with the statute. Section 2684, Code of 1924, provides, in part, as follows:

"The application shall be accompanied by a copy of the petition and agreements, together with the action of the board thereon, duly certified by the county auditor."

Section 2685 in part is as follows:

"Certified copy of the agreements as filed with the secretary of agriculture shall have the same force and effect as originals on file with him."

Under these sections, it cannot fairly be contended that it was necessary for the county auditor to certify to numerous petitions which were identical except for the signatures thereto. No useful purpose could be served by filing a large number of copies of the petition. It may be that duplicate copies of the petition were circulated and signed, but the statute contemplates that a copy of *the* petition shall be filed with the secretary of agriculture, and the names of all who signed this petition (or a duplicate copy thereof) were duly certified. This was a substantial compliance with the statute. It may be that a different rule would prevail as to the agreements under the accredited-area plan, as each agreement binds the party signing it, and differs from a general petition; but on this question we make no pronouncement.

Furthermore, there can be no question but that, at the time of the commencement of the proceedings to enroll the county under the accredited-area plan, the county was "operating

under the county-area plan." Such a situation is contemplated by the statute. Code Section 2694. The county was, in fact, "operating under the county-area plan." *Peverill v. Board of Supervisors*, 201 Iowa 1050; *Peverill v. Board of Supervisors*, 207 Iowa ——.

II. The petitions and agreements filed contained the following provision:

"We, the undersigned residents of Cedar County, Iowa, hereby petition your honorable body to make application to the Iowa Department of Agriculture for the enrollment of said  county under the county-area plan for the eradication of bovine tuberculosis, and we represent that each of us own breeding cattle within the county, and each for himself agrees that he will permit his entire herd or any of them to be examined and tuberculin-tested or retested at such times as may be considered necessary by the Bureau of Animal Industry of the United States Department of Agriculture and the Iowa Department of Agriculture, and that he will conform to and abide by all the rules and regulations laid down or which may be adopted by said departments for the purpose of carrying out the work of eradicating bovine tuberculosis."

After said agreements had been signed and filed, certain of the signers attempted to withdraw their signatures to said agreements and petitions. Regarding said matter, the parties stipulated:

"It is further stipulated and agreed that, if the owners of breeding cattle can legally withdraw their signatures from petitions previously executed, similar to plaintiffs' Exhibit A, that then and in such event, there are sufficient withdrawals on file with the secretary of agriculture to defeat the enrollment of Cedar County under the accredited-area plan."

Section 2694 of the Code of 1924, as amended by Chapter 54, Acts of the Forty-first General Assembly, provides as follows:

"Accredited Counties. Whenever 75 per cent of the owners of breeding cattle in any county operating under the county area plan, shall have signed agreements with the department of agriculture, the department shall cause a notice to be published

for two consecutive weeks in two official county papers of the date and place of hearing on said agreements, which hearing shall be held before the secretary of agriculture in said county not less than five nor more than ten days after the last publication, said date and place of hearing to be set by the secretary of agriculture.''

Under the record it appears that *prima facie* there were a sufficient number of signed agreements before the secretary of agriculture to meet the requirements of the statute.

''This gave him jurisdiction, and the withdrawal of some of said signatures before final action would not take away such jurisdiction.''

Such was our pronouncement in the recent case of *Peverill v. Board of Supervisors,* 207 Iowa ——. See, also, *Seibert v. Lovell,* 92 Iowa 507, and *Peverill v. Board of Supervisors,* 201 Iowa 1050.

III. It is contended that the secretary of agriculture had no jurisdiction to pass upon the matter of the enrollment of the county under the accredited-area plan, because he did not per-sonally attend the hearing in relation thereto, but substituted Dr. Malcolm to attend the hearing, and the secretary of agriculture acted on the record made before Malcolm. At the time, Malcolm announced to all objectors, counsel, and others present that he was not to make any ruling or decision upon the matters of law or fact presented, and that he was taking the evidence and records for the purpose of submitting the same to the secretary of agriculture. Malcolm administered oaths to the witnesses, and heard objections, but made no rulings thereon, but kept a record of the entire proceedings, and delivered the same, with all exhibits, to the secretary of agriculture. Appellants appeared at the hearing, and challenged the right of Malcolm to officiate at the hearing in the place of the secretary of agriculture. It is stipulated that the secretary of agriculture personally canvassed all of the reports, objections, petitions, withdrawals, and the entire record in the matter, before passing thereon. Appellants seek to enjoin all further proceedings under the accredited-area plan, on various grounds.

On or about August 17, 1926, the secretary of agriculture

notified the county auditor of Cedar County that he had found the petitions and agreements sufficient, and that Cedar County had been enrolled by him as an accredited area for the eradication of bovine tuberculosis. The secretary of agriculture authorized the board of supervisors to publish notice of such enrollment, and this was done.

In *Peverill v. Board of Supervisors*, 207 Iowa —, we said:

"One of the questions for determination by the secretary of agriculture before he made the order establishing Black Hawk County as an accredited area was, whether or not the statute with reference to the number of agreements required had been complied with. This probably, as contended by appellant, was a judicial act."

This case was decided under the statute as it existed at the time. There was then no provision in the statute for a notice or a hearing before the secretary of agriculture. Such provisions were, however, incorporated before the proceedings were established which are involved in the instant case.

Section 2694 of the Code of 1924 was amended by Chapter 54 of the Acts of the Forty-first General Assembly. This amendment became effective April 17, 1925. Under it, it is provided that the department of agriculture shall "cause a notice to be published for two consecutive weeks in two official county papers of the date and place of hearing on said agreements, which hearing shall be held before the secretary of agriculture in said county not less than five nor more than ten days after the last publication, said date and place of hearing to be set by the secretary of agriculture." Section 5, Chapter 54.

Said act also provides:

"Sec. 6. If objections are filed with the secretary of agriculture on or before the date fixed in the notice, the secretary shall hear the objectors and petitioners and determine whether or not the county shall become an accredited area."

There was no provision for any notice or hearing, prior to the enactment of said chapter. It is obvious that there is no provision in said statute for a hearing before any other person, or for any substitution for and on behalf of the secretary of agriculture.

It is of some significance that the forty-second general assembly provided that said hearing "shall be held before the secretary of agriculture, or someone designated by him." Section 2, Chapter 54, Acts of the Forty-second General Assembly But this amendment did not become effective until April 15, 1927, which was after the hearing under consideration in the instant case.

At the time the proceedings we are considering were had, the statute provided for the giving of notice and a hearing before the secretary of agriculture. This was an essential step in the validity of the proceedings for the establishment of a county as an accredited area. The legislature saw fit to provide for such notice and hearing, and designated that the hearing should be "before the secretary of agriculture." We do not think that it was sufficient compliance with the requirements of this statute that the hearing be had before some person who might be designated by the secretary of agriculture to sit at said hearing, and this is true even though the proceedings had at the hearing before said party were all reported *in extenso* to the secretary of agriculture, and were considered by him. We cannot extend the terms of the statute. There was no provision for the designation of a commissioner or any other person to sit in the place and stead of the secretary of agriculture at the hearing. The statute contemplated something more than a mere review of a record by the secretary of agriculture. The statute calls for something more than a mere ministerial act. Where an act to be done involves judgment or discretion, it cannot be delegated to an agent. *Abrams v. Ervin*, 9 Iowa 87; *Kinney v. Howard*, 133 Iowa 94, 105. The statute provides for a notice and a hearing and a determination by the secretary of agriculture. In legal parlance, a "hearing" technically refers to certain proceedings in equity, and "a trial" to such proceedings at law. In *Babcock v. Wolf*, 70 Iowa 676, we said:

"The trial of a chancery suit is called a *hearing*, and, technically considered, this includes, not only the introduction of the evidence and the arguments of the solicitors, but the pronouncing of the decree by the chancellor."

But aside from any technical meaning, the words "hearing"

and "trial" are familiar terms, and are generally understood as meaning an examination of facts, and generally of law, as well, before some person or tribunal authorized to act.

The important question for our consideration at this point is whether or not the secretary of agriculture had jurisdiction to enroll said county as an accredited area, because of his failure to have said hearing before him. It is stipulated in the record that all the proceedings had before Malcolm were certified to the secretary of agriculture, and that he personally passed upon and reviewed the same before ordering said county to be enrolled as an accredited area. This, however, was not a "hearing before the secretary of agriculture," as the statute in force expressly provided. The secretary, under said statute, had no power to designate someone else to sit at the hearing, which was, under the statute, to be before him. The fact that he afterward reviewed the proceedings could not give validity to his subsequent order of enrollment. A prerequisite to his right to enter such order was that such a hearing as the statute contemplates should be had before him. The giving of a notice and such a hearing were, by legislative enactment, made prerequisites to the power conferred upon the secretary of agriculture to enroll such county as an accredited area. This being true, the secretary of agriculture did not acquire jurisdiction to make such order in the manner pointed out by the statute. There was no hearing before him, and therefore there was no basis upon which he could make the order in question. In a very proper sense it may be said that he did not have any jurisdiction of the subject-matter to enter such an order, and, being wanting in jurisdiction, the order was necessarily void. We see no escape from the conclusion at this point that the order of the secretary of agriculture designating said county as an accredited area was without jurisdiction, and hence was void. This being true, the appellants could invoke the aid of a court of equity to enjoin further proceedings under said order designating said county under the accredited-area plan. This is exactly what they sought in the instant case, and this relief the court should have granted.

In view of the entire situation, and especially the amendment to the statute, this holding will be without prejudice to the right of the secretary of agriculture to proceed further in said matter if deemed advisable, and the cause will be remanded.

For the reasons pointed out, the decree of the district court must be, and it is,—*Reversed and remanded.*

ALBERT, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.