MAUDE SCHROYER, Appellee, v. JASPER COUNTY, Appellant.

No. 44189.

APRIL 5, 1938.

F. L. Bedell and H. C. Schulz, for appellant.

John S. Greene and Cross & Hamill, for appellee.

RICHARDS, J.—This proceeding under the Workmen's Compensation Law, Code 1935, section 1361 et seq., was brought by claimant Maude Schroyer as widow of Joe Schroyer. She alleges that her husband received injuries, arising out of and in

the course of his employment by defendant county, that caused his death. The county has appealed from the judgment of the district court that confirmed an allowance of compensation by the Industrial Commissioner.

**■■■** With respect to appellant's first complaint, that the district court erred in sustaining the commissioner's finding that Joe Schroyer received injuries arising out of and in the course of his employment, and that such injuries caused or contributed to his death, the record discloses that at about 3 p. m. on May 4, 1936, Schroyer and two other men were engaged in filling an excavation in which a metal culvert had been relaid across a road in Sherman Township in defendant county. Two teams and scrapers were being used. Schroyer was dumping dirt from the scrapers into the excavation, and as he held the handles of one of the scrapers the team jumped, resulting in Schroyer being thrown into the excavation. He landed on his head, neck, and shoulders, and was wedged in between the side of the excavation and the culvert. The excavation was 3 or 3½ feet deep. Schroyer lay where he fell for two or three minutes. Upon getting out he said to a witness, "Charlie, I hurt myself," putting his hand on his right arm and shoulder and on the back of his neck. The work stopped for 10 or 15 minutes. When it was resumed one of the teamsters did some of the dumping that Schroyer had been engaged in doing. After arriving at his home at about 5:30 p. m. Schroyer ate a very light supper. Then contrary to his usual practice of reading a newspaper, he lay down. At 8:30 he went to bed. His usual practice was to do so between 9 and 10 o'clock. At about 4 o'clock of the morning of May 5, claimant heard Schroyer fall upon his bed. Going to him she asked what was the matter. Schroyer answered, "I fell. I have had a stroke." A physician was immediately called, and about 10 minutes after he arrived Schroyer became unconscious. This condition continued until his death at about 6 o'clock in the evening of May 7, 1936. Decedent was described by the witnesses as having been a rather large man, "full blooded," of ruddy complexion. His age was between 66 and 67 years. That a cerebral hemorrhage resulted in his death is undisputed. The controversial question raised by appellant on this appeal is whether decedent's fall into the excavation caused or contributed to the hemorrhage. Upon that phase of the controversy testimony of qualified experts was introduced. The physician

who was called and was in attendance on decedent as has been related, after detailing the things he observed, as well as information as to decedent's blood pressure at times previous to May 4, 1936, testified that in his opinion injuries received in the fall into the excavation caused the hemorrhage, and were a very active cause thereof. Expert testimony that there was no such probable causative relationship was offered by defendant. The cause of this death was a fact question, the determination of which lay with the commissioner. There being competent and substantial evidence in the record that warranted the commissioner's finding, the question is not one for reconsideration on appeal. Jones v. Eppley Hotels Co., 208 Iowa 1281, 227 N. W. 153; Flint v. Eldon, 191 Iowa 845, 183 N. W. 344.

 Appellant further urges that decedent was not such a workman or employee as would be entitled to compensation under the provisions of the Workmen's Compensation Law. Appellant claims the record shows that instead of being a workman or employee Schroyer held an official position, i. e., that of patrolman. Hence, says appellant, Schroyer was not within the purview of this law on account of Code section 1421, subd. 3, par. d, found in the Workmen's Compensation Law which provides:

"1421. Definitions. * * *

"3. The following persons shall not be deemed 'workmen' or 'employees': * * *

"d. A person holding an official position, or standing in a representative capacity of the employer, or an official elected or appointed by the state, county, school district, municipal corporation, city under special charter or commission form of government."

The particular statutes under which appellant claims Schroyer held the official position of patrolman are those found in chapter 243, section 4774 et seq., Code 1935. That chapter provides that the board of supervisors shall cause all highways under their supervision to be patrolled during certain periods, and to this end the board shall appoint such number of patrolmen as may be necessary. They receive such compensation as the board may determine, are subject to the orders of the board, and hold their positions at the pleasure of the board. The chapter also provides that patrolmen shall give bonds for the faithful

performance of their duties, in such sum as the board may order. The chapter provides that the board will supply patrolmen with all necessary tools and equipment, and that the patrolmen will be responsible upon their bonds for the care of the same; and that patrolmen, in addition to duties in connection with repairing the roads, may enforce the provisions of law relating to travel on the primary roads of the county, and while on duty shall wear official badges clearly distinguishing them as officers of the law; the badge being furnished by the board. Provision is also found in this chapter that each patrolman shall take the same oath as any peace officer, and shall have the authority of a peace officer.

All that need be said as to whether Schroyer was a patrolman is this—none of these acts or things found in chapter 243, that might have constituted the conferring upon Schroyer of the office of patrolman, were done or performed by either the board of supervisors or by Schroyer. There is no record of any appointment by the board, no bond was given by Schroyer for the faithful performance of his duties, or for the care of any tools or equipment, there is no approval of any bond, no official oath was taken, nor was any oath taken as a peace officer. No badge to distinguish him as such was furnished. We find no warrant for holding that there was an appointment by the board or an acceptance or qualification by Schroyer. The record fails to show that Schroyer had title to the office, assuming that it was an office.

■■■ It is further argued by appellant that, even though decedent was not a patrolman within the contemplation of chapter 243, nevertheless he was not a workman or employee entitled to compensation, because the record shows that he was "standing in a representative capacity of the employer," within the purview of section 1421, subd. 3, par. d, above set out. To support this contention appellant points out certain things that Schroyer did; that is, he went from one place to another in Sherman Township doing work where needed in the repairing of township roads; for that purpose a car bearing an official license plate was used, the county furnishing the gas, tires, and repairs; if the car needed anything Schroyer got it; if on a repair job on a road he required assistance he had been given authority by the county engineer in a limited way to hire men, but not to the extent of six or seven men on one job; he had asked the engineer whether

he, decedent, should buy a few posts when needed, and the engineer had assented that he do so; when bridge planks were needed decedent made it known and the engineer sent them out from the county yard; Schroyer used requisitions when he requested tractor repairs, an axe, or something of that kind; he made reports at stated intervals showing what work he had done, the hours put in, the names and hours of employment of any one he procured to assist him; poll tax receipts were furnished by the board which decedent issued to men who completed work in payment of their poll taxes, and he collected some poll taxes in cash, issuing receipts, and turning the money to the county treasurer or auditor; decedent's reports were upon blanks on which were printed the words patrolman-foreman beneath the place of signature.

At the time Schroyer was doing these things section 4644-c1, chapter 240, Code 1935, imposed upon boards of supervisors the duty to construct, repair and maintain the secondary road and bridge systems of their respective counties, including collection of poll taxes in money or labor. Section 4644-c19 required that each board employ one or more county engineers. Section 4644-c23 provided that all construction and maintenance work upon the secondary road and bridge systems shall be performed under the direction and immediate supervision of the county engineer. Appellant county had appointed a county engineer, and the maintenance work in Sherman township was being directed and supervised by him, including the work Schroyer was doing in that township, all as contemplated by said section 4644-c23. It appears from the record that it was because he was ordered by the county engineer so to do that Schroyer in working upon the roads functioned in the manner that has been related. In connection with the poll taxes, he was carrying out orders of the board. We glean from the evidence that Schroyer neither acted nor attempted to act in any other than a ministerial manner or capacity, carrying out the directions he received. With our view expressed in the preceding sentence appellant disagrees, and urges that Schroyer appears to have been exercising his own discretion, acting in a representative capacity of the county in at least some particulars. If we were to agree with appellant, yet no mere appearance of things would establish that Schroyer did stand in a representative capacity of the employer, the county, unless additionally it be shown that he

*had authority* to act for the county, and to bind the county as its representative. Kutil v. Floyd Valley Mfg. Co., 205 Iowa 967, 218 N. W. 613; Hamilton v. Farmer Canning Co., 220 Iowa 25, 261 N. W. 506. If he had such authority it must have been derived from some lawful source. But no such source can be found. That there was no statutory source of authority is quite evident. That neither the board of supervisors nor the county engineer, the officials in whom was vested the duty, power, and authority to maintain these roads, could delegate any of their powers in any manner, except as such delegation of powers might relate to duties merely ministerial in character, is well established. Kinney v. Howard, 133 Iowa 94, 110 N. W. 282; Thede v. Thornburg, 207 Iowa 639, 223 N. W. 386. It follows that Schroyer was not acting in a representative capacity of his employer as contemplated by section 1421, subd. 3, par. d. We do not discuss, because not argued, the question whether in section 1421, subd. 3, par. d, the words "person * * * standing in a representative capacity of the employer" were or were not intended to have application when the employer is the state or one of its instrumentalities mentioned in the second phrase of section 1421, subd. 3, par. d. The judgment of the trial court is affirmed.—Affirmed.

Chief Justice and all Justices concur.