SOUTH DAKOTA HIGH SCHOOL INTERSCHOLASTIC
ACTIVITIES ASSOCIATION et al., Appellants

v.

ST. MARY'S INTER-PAROCHIAL HIGH SCHOOL OF SALEM
et al., Respondents

(141 N.W.2d 477)

(File No. 10272. Opinion filed April 8, 1966)

**Samuel W. Masten,** of **Masten & Myrabo,** Canton, **G. F. Johnson,** Gregory, for plaintiffs and appellants.

**John S. Murphy, Jeremiah D. Murphy** and **Marvin D. Keller,** of **Boyce, Murphy & McDowell, Louis H. Smith, Claude Hamilton,** Sioux Falls, **Joseph Barnett,** of **Agor, Siegel, Barnett & Schutz,** Aberdeen, **C. J. Nagel,** Salem, for defendants and respondents.

BANDY, Circuit Judge.

The South Dakota High School Interscholastic Activities Association, an unincorporated organization, together with the individuals acting as its Board of Control and its Executive Secretary, sought a judgment declaring Chapter 51 of the Laws of 1964 to be unconstitutional. By counterclaim St. Mary's Inter-Parochial High School of Salem, South Dakota, and others, asked enforcement of Chapter 51 by mandamus. The trial court found the Act to be constitutional and granted a writ requiring the admission of St. Mary's and all other high schools similarly situated to the Association. Execution of the writ was stayed pending determination of the appeal to this court.

While the record on appeal is voluminous, it consists principally of exhibits received on stipulation. Under the view we take, no material factual issue was presented to the circuit court. The appellants contend that the legislature exceeded its powers in the enactment of Chapter 51 and that the trial court erred in holding to the contrary.

The trial court found that Chapter 51 is a proper exercise of the police power and major portions of the briefs are addressed to this point. We do not believe that the police power is involved.

The record indicates that this case was presented, tried and decided upon the theory that the Association is a private

organization similar to history clubs, fraternal organizations, labor unions, medical associations and the like. Some reliance appears to have been placed upon the Association having been conceived by school superintendents and principals. The trial court adopted as its Finding I

"* * * the 'Association', is an unincorporated association formed * * * by public school administrators of the State of South Dakota."

The critical, and we believe decisive, question is as to the nature of the Association. Examination of the 1964 By - Laws establishes, that:

By Article II, it is provided:

"The purpose of this Association is to direct and coordinate all interscholastic activities carried on by the member high schools of South Dakota. * * *"

By Section 1 of Article III, it is provided:

"Membership Restricted. The membership of this Association shall consist of public high schools in South Dakota supported primarily by federal, state, or local taxes and listed in the high school directory as accredited high schools, and other high schools whose application is approved by a two - thirds majority vote of member schools voting."

By Section 2 of Article III, it is provided:

"Method of Joining. Any eligible high school can become a member of this Association by (1) submitting a statement signed by a proper school official to show that the local board of education has taken action to approve the application for membership and also to approve these By - Laws * * *"

By Section 1 of Article V, it is provided:

"Board of Control. There shall be a Board of Control of six (6) members, five of these members shall be Superintendents or principals of member schools and one (1) to be a School Board Member from a School Board representing a member school."

█  From the foregoing excerpts it is clear that the membership of the Association is composed of and confined to High Schools and that any contractual relationship exists solely by virtue of action taken by the various school boards representing the member schools. It necessarily follows that the individuals who hold office as the Board of Control and the Executive Secretary have no justiciable interest in the Association.

█  Whether the local school boards had power to enter into this Association does not require decision here. Chapter 51 recognizes the existence of the Association and, at least by implication, approves some degree of action by local school boards in relation thereto.

█  Extensive analyses of the holding of this court in State v. Nuss, 79 S.D. 522, 114 N.W.2d 633, have been presented. We do not think that holding is applicable here. Nuss dealt with a private school. Control over private schools is based upon exercise of the police power, but that is not true as to public schools.

The law on the subject is thus stated in 47 Am.Jur., Schools, § 221, page 459:

"Legislative power over public schools is complete. Such is not the case, however, in respect to private schools, and the power to prohibit or regulate them is subject to the same limitations as exist in the case of private property or rights generally."

In 78 C.J.S. Schools and School Districts, § 15, page 630, it is written:

"The constitutional requirement that the legislature should provide for the maintenance and support of the public school system places the educational system in the hands of the legislature, free from any interference from the judiciary save as required by constitutional limitations."

■ By the Enabling Act, under which statehood was obtained, the establishment and maintenance of a system of public schools is required. This duty was specifically acknowledged by Section 1 of Article VIII of the State Constitution. However, even in the absence of such provisions, the legislative power is not subject to doubt.

"It is elementary that the legislative power of state legislatures is unlimited except as limited by the State or Federal Constitutions." Acker v. Adamson, 67 S.D. 341, 293 N.W. 83.

By Chapter 51 of the Laws of 1964 the people of the State of South Dakota, acting through their legislature, said:

"All high schools approved and accredited by the Superintendent of Public Instruction, pursuant to the provisions of SDC 1960 Supp. Title 15 as amended from time to time, shall be eligible for membership in the South Dakota High School Interscholastic Activities Association or any successor thereof. Nothing herein contained shall prevent such Association, or its successor, from adopting uniform rules and regulations governing its affairs, including provision for suspension of schools or their students for violations of such rules and regulations."

■ The record establishes that all of the accredited public high schools in South Dakota are presently members of the Association. The impact of Chapter 51 is upon them and is well within the power of the legislature to regulate and control its public schools.

■ But, it is claimed that the admission of additional high schools will give them an interest in presently held property of the Association, thus effecting an unconstitutional taking of the Association's property. Chapter 51 provides for the adoption of "uniform rules and regulations governing its affairs * * *." This provision is clearly prospective and provides a method for the protection and adjustment of any existing property rights. This court will not attempt to suggest or advise as to what rule or regulation may be adopted to accomplish this end. Until such a rule or regulation has been adopted no justiciable question is presented.

It is also contended that Chapter 51 violates the limitations contained in Section 3 of Article VI of the South Dakota Constitution, which reads:

"No money or property of the state shall be given or appropriated for the benefit of any sectarian or religious society or institution."

and of Section 16 of Article VIII, which reads:

"No appropration of lands, money or other property or credits to aid any sectarian school shall ever be made by the state, or any county or municipality within the state, * * *."

■ It is clear that Chapter 51 does not purport to provide for any gift nor constitute an appropriation, as such. If, in fact, a portion of the annual dues paid in by some high schools have come from funds raised by taxation, Chapter 51 does not sanction such practice. It merely says that if there is to be an Association to control and, in effect, monopolize high school interscholastic activities, it must admit all accredited high schools, under uniform rules and regulations.

■ It cannot be doubted that admission of these private schools will in some instances permit students of parochial schools to jointly with public school students utilize some facilities of

public schools while engaged in interscholastic contests. We do not think this can be said to constitute "aid to a sectarian school."

■ Those parochial students who might participate in interscholastic events would, under the eligibility rules now prescribed by Section 9 of Article VII of the Association's By-Laws, in substantially every instance be entitled to attend the public schools of South Dakota. To bar them from participation with public school students in events because there would be an incidental use of public school facilities solely because of their attendance at a sectarian school would be to militate against them on that ground, which the Constitution surely does not require.

To the end that an opportunity may be had to adopt any additional uniform rules and regulations deemed necessary, execution of the Writ of Mandamus heretofore issued shall be stayed for ninety days from the date of the Remittitur herein.

Subject to the temporary stay provided for in the preceding paragraph, the judgment of the trial court is affirmed.

RENTTO, P. J., and ROBERTS, BIEGELMEIER and HOMEYER, JJ., concur.

BANDY, Circuit Judge, sitting for HANSON, J., disqualifed.