**William Hal BUNGER, a minor, by William H. Bunger, his Father and Next Friend, Appellant,**

v.

**IOWA HIGH SCHOOL ATHLETIC ASSOCIATION et al., Appellees.**

No. 55105.

Supreme Court of Iowa.

May 11, 1972.

Kurth & Bunger, Carroll, for appellant.

Engelbrecht & Ackerman, Waverly, and Doran, Doran, Doran & Courter, Boone, of appellees.

Swift, Brown, Rogers, Winick & Randall and James R. Swanger, Des Moines, amicus curiae.

UHLENHOPP, Justice.

This case involves the validity of a rule of the Iowa High School Athletic Association (which we will refer to as IHSAA or the association).

IHSAA is an unincorporated association in charge of boys' interscholastic athletic events in Iowa, including tournaments. Waverly-Shell Rock Community School District is a member of IHSAA, as are all other high schools in Iowa except the school at Kalona. Member schools agree to abide by the constitution and bylaws of IHSAA, which may be amended by referendum of the members. A board of control is in charge of the affairs of IHSAA and may interpret its rules. The board consists of six individuals elected by the members of IHSAA, a seventh appointed by the Iowa Association of School Boards, and an eighth (ex officio) appointed by the State Board of Public Instruction. IHSAA has, in addition, a representative council, which consists of 25 individuals elected by high school administrators. An executive secretary manages the affairs of IHSAA. A portion of the gate receipts of tournaments plus membership fees of $2 each support the association.

Under the constitution and bylaws, a member school cannot allow an athlete who is known to be ineligible to engage in interscholastic athletic events. Nor can a member school engage in such events with a nonmember school. A member school violating the constitution or bylaws is subject to probation, suspension, or expulsion. One portion of the constitution and bylaws deals with eligibility of athletes to participate in interscholastic events.

The member schools strongly oppose the use of alcoholic beverages by athletes. In recent years, the drinking problem has increased, particularly the drinking of beer. Attempts by individual school boards to deal with the problem proved unsatisfactory. School boards and administrators were sometimes under local pressure to play outstanding athletes notwithstanding infractions, and different boards had varying rules relating to similar violations.

Largely at the behest of the schools themselves, a committee of IHSAA studied the problem and proposed rules which were adopted by a substantial majority vote of the membership. Pertinent to this case is § 20 of those rules:

Any student whose habits and/or conduct, both in and out of school during the school year or during the summer months, are such as to make him unworthy to represent the ideals, principles and standards of his school and this Association shall be ineligible and it shall be the duty of the superintendent or his delegated principal to exclude him from interscholastic athletic participation until reinstated to eligibility by the local school administration.

Item 1: In the event a boy comes under the jurisdiction of any Court for juvenile delinquency, or charged with a crime, except minor traffic violations, he shall automatically become ineligible to participate in interscholastic athletics. However, upon application of the local school administrator to the Iowa High School Athletic Association a committee will be convened, either in person or by telephone, which shall consist of the Sec-

retary of the Iowa High School Athletic Association, the school administrator, the Judge of the Court having jurisdiction and the probation officer. Such committee shall consider and determine whether the conditions and facts of the Court involvement on the part of the boy are such that an eligibility reinstatement shall be permitted, and, if so, the conditions thereof, particularly as to the date on which the reinstatement should be effective. If a boy has been released from probation or if there has been dismissal of the action or termination of the proceedings, the school administrator may make application for reinstatement of eligibility directly to the Board of Control.

Item 2: In the event a boy pleads guilty or is found guilty of using alcoholic beverages or pleads guilty or is found guilty of the use of dangerous drugs, or the transportation of either such beverages or drugs, he shall be declared ineligible for participation in interscholastic athletic competition for a minimum of six weeks for the first offense. (Individual member schools may exclude a boy for more than six weeks.) For the second offense, the penalty shall be loss of interscholastic athletic eligibility for a period of twelve months. At the end of said period the boy may, upon proper application, be reinstated to eligibility by action of the Board of Control.

This section is known as the Good Conduct Rule and Item 2 of it is known as the "beer rule."

Purporting to interpret the beer rule, the board of control adopted the following ruling (which we will refer to as "the interpretation" or "the rule"):

A boy shall lose at least 6 weeks of interscholastic competition if he is found guilty of possession, consumption or transportation of alcoholic beverages or dangerous drugs, or if he admits to a school administrator, the coach or an officer of the law that he has possessed or consumed such beverages or drugs. A boy is also subject to the same loss of eligibility if he is in a vehicle stopped by a law officer and alcoholic beverages and/or dangerous drugs are found in the vehicle. However, if he reports this incident to his superintendent, principal, athletic director or coach the next day of school or prior to the next scheduled contest, whichever occurs first, and then following the boy's answers to six basic questions and completion of investigation, the school administration is convinced that the boy had no knowledge of such beverages or drugs in the vehicle, the administrator shall then file a report to the Board of Control on a form provided by the Association, that the boy has lost no eligibility and is therefore remaining eligible. The six basic questions are: (a) Did the boy have knowledge that there was alcoholic beverages and/or dangerous drugs in the vehicle? (b) Were there any open containers of alcoholic beverages or dangerous drugs in the vehicle? (c) Had anyone in the vehicle been consuming beverages or drugs found in the vehicle? (d) When did the athlete become aware that there were beverages or drugs in the vehicle? (e) What did the law officer observe? (f) Has the boy been in violation of the Good Conduct Rule before? If following the investigation the administration finds that the boy has been in violation, he shall be ineligible. It shall not be a violation when an athlete is stopped in a vehicle with his father, mother, brother or sister who is twenty-one years of age or older.

The State Department of Public Instruction approved the Good Conduct Rule and the interpretation of it and IHSAA disseminated that Rule and the interpretation among its members. The members made the Rule and interpretation known to athletes, including plaintiff William Hal Bunger. William is a 16-year-old football player of ability on the outstanding Waverly-Shell Rock team.

On the evening of June 7, 1971, William and three other minors were riding in a car containing a case of beer. William knew the beer was in the car. An Iowa highway patrolman stopped the four minors, discovered the beer, and issued summonses to all four for possession of beer as minors. Three pleaded guilty. William pleaded not guilty, and the charges against him were subsequently dismissed by the county attorney.

On June 10, 1971, William reported the beer incident to his school athletic director and stated he knew at the time that the beer was in the car. Thereupon, the school officials declared William ineligible for six weeks commencing with the opening of the fall football season.

William brought the present suit to enjoin enforcement of the rule. The trial court upheld the rule, and William appealed.

William levels a number of charges against the rule. We think, however, that we need not consider all of his claims, for two basic questions control the case. First, does IHSAA have authority to promulgate the rule in question? Second, is the rule valid on its merits? We confine ourselves to the rule before us rendering ineligible an athlete who occupies a car with knowledge of the presence of beer which is found by a law officer.

I. *Authority to Promulgate the Rule.* In our scheme of things, authority to provide for the educational interests of the state is confided in the General Assembly. Iowa Const. Art. IX, § 15; Kinzer v. Independent School Dist. of Marion, 129 Iowa 441, 105 N.W. 686. Pursuant to that authority, the legislature has provided for school districts, to be under the control of elected district directors. Code, 1971, § 274.1, § 274.7 ("The affairs of each school corporation shall be conducted by a board of directors"), § 279.8 ("The board shall make rules for its own government and that of the . . . pupils . . . and require the performance of duties . . . imposed by law and the rules.").

Can a school board re-delegate its rule-making power regarding pupils to some other organization? Several courts have considered this question to more or less extent, although under statutes or facts distinguishable from the present ones. Mitchell v. Louisiana High School Athletic Ass'n, 430 F.2d 1155 (5th Cir.); Louisiana High School Athletic Ass'n v. St. Augustine High School, 396 F.2d 224 (5th Cir.); Oklahoma High School Athletic Ass'n v. Bray, 321 F.2d 269 (10th Cir.); Kelley v. Metropolitan County Board of Education of Nashville, 293 F.Supp. 485 (M.D.Tenn.); Scott v. Kilpatrick, 286 Ala. 129, 237 So. 2d 652; Quimby v. School Dist. No. 21 of Pinal County, 10 Ariz.App. 69, 455 P.2d 1019; Sult v. Gilbert, 148 Fla. 31, 3 So.2d 729; Robinson v. Illinois High School Ass'n, 45 Ill.App.2d 277, 195 N.E.2d 38; State ex rel. Indiana High School Athletic Ass'n v. Lawrence Circuit Court, 240 Ind. 114, 162 N.E.2d 250; David v. Louisiana High School Athletic Ass'n, 244 So.2d 292 (La.App.); Sanders v. Louisiana High School Athletic Ass'n, 242 So.2d 19 (La. App.); Marino v. Waters, 220 So.2d 802 (La.App.); Brown v. Wells, 288 Minn. 468, 181 N.W.2d 708; State ex rel. Ohio High School Athletic Ass'n v. Judges of Court of Common Pleas, 173 Ohio St. 239, 181 N.E.2d 261; Morrison v. Roberts, 183 Okl. 359, 82 P.2d 1023; In re German Township School Directors, 6 Fay.L.J. 15, 46 Pa.Dist. & Co.R. 562; South Dakota High School Interscholastic Activities Ass'n v. St. Mary's Inter-Parochial High School of Salem, 82 S.D. 84, 141 N.W.2d 477; University Interscholastic League v. Midwestern University, 152 Tex. 124, 255 S.W.2d 177; State ex rel. West Virginia Secondary School Activities Comm'n v. Oakley, 152 W.Va. 533, 164 S.E.2d 775.

 Rule-making by school boards involves the exercise of judgment and discretion. The legislature has delegated rule-making to those boards, and the gen-

eral principle is that while a public board or body may authorize performance of ministerial or administrative functions by others, it cannot re-delegate matters of judgment or discretion. Kinney v. Howard, 133 Iowa 94, 110 N.W. 282. The Kinney case involved an invalid re-delegation by a school board, and this court stated (133 Iowa at 104–105, 110 N.W. at 286), "While it is a general rule that power conferred upon a public board or body cannot be delegated, yet a public corporation or municipality or instrumentality of government may, like a private corporation or person, do its ministerial work by agents or committees. . . . Where the act to be done involves judgment or discretion, it cannot be delegated to an agent or committee." See also State v. Johnston, 253 Iowa 674, 113 N.W.2d 309; Thomson v. Iowa State Commerce Comm'n, 235 Iowa 469, 15 N.W.2d 603; Schroyer v. Jasper County, 224 Iowa 1391, 279 N.W. 118; Thede v. Thornburg, 207 Iowa 639, 223 N.W. 386; Mulhall v. Pfannkuch, 206 Iowa 1139, 221 N.W. 833; Erickson v. Cedar Rapids, 193 Iowa 109, 185 N.W. 46; Young v. County of Blackhawk, 66 Iowa 460, 23 N.W. 923. The general principle is stated thus in 2 Am.Jur.2d Administrative Law § 222 at 52:

> It is a general principle of law, expressed in the maxim "delegatus non potest delegare," that a delegated power may not be further delegated by the person to whom such power is delegated, and that in all cases of delegated authority, where personal trust or confidence is reposed in the agent and especially where the exercise and application of the power is made subject to his judgment or discretion, the authority is purely personal and cannot be delegated to another unless there is a special power of substitution either express or necessarily implied.

As to school authorities in particular, this is stated in 78 C.J.S. Schools and School Districts § 122 at 910:

> In accordance with the rule applicable to public boards and officers generally . . . a board of education, or of directors, trustees, or the like, of a school district or other local school organization cannot lawfully delegate to others, whether to one or more of its members, or to any school officer, or to any other board, the exercise of any discretionary power conferred on it by law.

To the same effect as to governmental subdivisions generally, see 56 Am.Jur.2d Municipal Corporations, Counties & Other Political Subdivisions § 193 at 244, § 196 at 251, § 197 at 253 (cannot be delegated to private individuals or corporations), § 198 at 253–254 (cannot be surrendered). See also 73 C.J.S. Public Administrative Bodies and Procedure § 57a at 380–381 ("although they may delegate merely ministerial functions, in the absence of statute or organic act permitting it, they cannot delegate powers and functions which are discretionary or quasi-judicial in character, or which require the exercise of judgment"); 62 C.J.S. Municipal Corporations § 154b at 316 ("In the absence of express authority, the governing body of the corporation must itself exercise general discretionary powers; they cannot be exercised by any other board. Delegata potestas non est delegari is a general maxim applicable with peculiar force to any form of sovereign power"). The author states in Rezny, Legal Problems of School Boards, 9 (1966), "A school board must clearly understand the difference between the exercise of judgment and discretion and the performance of administrative or ministerial duties. The courts have held quite consistently that the board of education cannot delegate its powers unless they are of administrative or ministerial nature."

Cases are legion involving application of the principle to various agencies and governmental units, including schools. Among the decisions are Cloverdale Union High School Dist. v. Peters, 88 Cal.App. 731, 264 P. 273 (school); Colorado Racing Comm'n

v. Conner, 490 P.2d 75 (Colo.App.) (racing agency); Snider v. Kit Carson School Dist. R–1, 166 Colo. 180, 442 P.2d 429 (school); Big Sandy School Dist. v. Carroll, 164 Colo. 173, 433 P.2d 325 (school); Amara v. Daytona Beach Shores, 181 So. 2d 722 (Fla.App.) (city); Elder v. Board of Education of School Dist. No. 127½, 60 Ill.App.2d 56, 208 N.E.2d 423 (school); In re Appeal of Lego v. Rolfe, 268 Minn. 483, 129 N.W.2d 811 (school); Muehring v. School Dist. No. 31 of Stearns County, 224 Minn. 432, 436, 28 N.W.2d 655, 658 (school —"It is elementary that a public corporation, agency, or officer to whom governmental power has been delegated by statute cannot redelegate such delegated power."); Pearson v. Washington, 439 S.W.2d 756 (Mo.) (city); Bowles v. Fayetteville Graded Schools, 211 N.C. 36, 188 S.E. 615 (school); Anderson v. Grand River Dam Authority, 446 P.2d 814 (Okl.) (conservation agency); Hillman v. Northern Wasco County People's Utility Dist., 213 Or. 264, 323 P.2d 664 (utility agency).

■ But IHSAA contends the rule in question is actually a rule of each individual school board, in that each board agrees to abide by the rules of IHSAA when it joins the association. By joining the association, IHSAA says, each board promulgates IHSAA's rules as its own.

We think this contention is inconsonant with the realities of the situation. The rules are actually association rules. A rule is initially adopted by majority vote of the association members. Bearing in mind that a school board cannot re-delegate its rule-making power, how can we say that a school which votes against a proposed rule has itself promulgated that rule? Again, a school which joins IHSAA after a number of rules have been adopted has no choice as to the rules it will accept. It must take them all and abdicate its nondelegable responsibility to select the rules it wishes to have. Then what about a member school which becomes dissatisfied with a rule? It has no power to repeal the rule. To say the school can withdraw

from IHSAA is no answer. If it leaves IHSAA voluntarily, or involuntarily for violating the rule, its boys' interscholastic athletic program is at an end—except for playing Kalona. Its hands are tied. The power is actually in the association, not in each school board where the statute places it.

What we have here, in fact, is an association which started out arranging interschool games and tournaments and grew into an organization above individual schools, regulating all manner of affairs relating to athletes. The association did not usurp the regulatory functions of individual schools; the schools turned over those functions to the association.

IHSAA also contends that a statute has been enacted which makes the rule valid in two separate ways—by authorizing schools to delegate their rule-making power to an association, and by authorizing the association itself to make rules subject to the approval of the State Board of Public Instruction. The statute is § 257.25(10), Code, 1971. Consideration of that statute requires some background.

With the infusion of state funds into local schools, the legislature desired that schools come up to minimum standards. A statute was enacted giving the State Superintendent of Public Instruction, subject to the approval of the State Board of Public Instruction, authority to set standards for schools and to disapprove schools not meeting those standards. 55 G.A. ch. 114, § 18(13). The statute contained no guidelines and in 1964 was held unconstitutional in Lewis Consolidated School Dist. v. Johnston, 256 Iowa 236, 127 N.W.2d 118. In 1965 and by amendments in subsequent sessions, the legislature adopted a comprehensive statute containing guidelines for approval and disapproval of schools by the State Board of Public Instruction, in what is now § 257.25, Code, 1971. That statute provides in subsection 10:

> After July 1, 1966, no public school shall participate in or allow students rep-

resenting such public school to participate in any extracurricular interscholastic contest or competition which is sponsored or administered by an organization as defined in this subsection, unless such organization (a) is registered with the state department of public instruction, (b) files financial statements with the state department in the form and at the intervals prescribed by the state board of public instruction, and (c) is in compliance with rules and regulations which the state board of public instruction shall adopt for the proper administration, supervision, operation, eligibility requirements, and scheduling of such extracurricular interscholastic contests and competitions and such organizations. For the purposes of this subsection "organization" means any corporation, association, or organization which has as one of its primary purposes the sponsoring or administration of extracurricular interscholastic contests or competitions; but shall not include any agency of this state, any public or private school or school board, or any athletic conference or other association whose interscholastic contests or competitions do not include more than twenty schools.

Enactment of § 257.25(10) probably resulted in part from a desire on the part of schools to obtain interscholastic activity rules of statewide uniformity.

Our statutes also provide that if a state agency promulgates a rule of general application, as distinguished from a rule relating solely to the internal operation of the agency, the agency must submit the rule to the Attorney General and the Legislative Departmental Rules Committee for a prescribed procedure. Code, 1971, ch. 17A.

In accordance with § 257.25(10), the State Board of Public Instruction in 1966 promulgated several rules regarding athletic associations and interscholastic athletic events, and complied with the procedure prescribed by chapter 17A. See 1971 Iowa Dept'l Rules 656–657. But none of the rules related to the subject matter of the rule before us.

In 1968 IHSAA adopted the Good Conduct Rule and the interpretation of it and reported them to the State Department of Public Instruction, which approved them. But the State Board did not promulgate them as its own rules or put them through chapter 17A procedure.

■ IHSAA's first contention, that § 257.25(10) authorizes school boards to redelegate to it their rule-making authority, overextends the statute. The language of § 257.25(10) is that public schools shall not allow students to participate in an interscholastic contest or competition "which is sponsored or administered by an organization as defined in this subsection" unless the organization registers and files financial statements with the State Department of Public Instruction and complies with the Board's rules. An "organization" is defined to include an association such as IHSAA.

This language of § 257.25(10) clearly means that schools may participate in interscholastic events sponsored by qualifying organizations, and we think it also means, inferentially, that schools may belong to such organizations. But the language cannot be stretched to mean that schools may turn over their statutory rule-making authority to such organizations.

■ IHSAA's second contention, that § 257.25(10) authorizes IHSAA itself to promulgate rules if approved by the State Department of Public Instruction is contrary to the language of the statute. Subsection 10 permits schools to allow students to participate in interscholastic events sponsored by organizations that are, among other things, "in compliance with rules and regulations which the *state board of public instruction shall adopt* for the proper administration, supervision, operation, *eligibility requirements*, and scheduling of such extracurricular interscholastic contests and competitions. . . . " (Ital-

ics added.) Thus the eligibility rule-making authority, so far as § 257.25(10) is concerned, is in the State Board, not in IHSAA. Moreover, since promulgation of eligibility rules involves judgment and discretion, we think the State Board cannot re-delegate its rule-making authority under § 257.25(10) any more than a school board can re-delegate its rule-making authority under § 279.8. And since eligibility rules are of general application and do not merely relate to the internal operation of the State Department, such rules by the Board must undergo chapter 17A procedure. (While the Board may adopt eligibility rules under § 257.25(10), proceeding in accordance with chapter 17A, undoubtedly local school boards retain their authority to adopt non-conflicting eligibility rules under § 279.8. Section 257.25(10) is the more recent statute, but repeals by implication are not favored. Northwestern Bell Tel. Co. v. Hawkeye State Tel. Co., 165 N.W.2d 771 (Iowa).)

■ The rule before us is, in fact, a rule of IHSAA and not of the Waverly-Shell Rock Board of Education or of the State Board. Neither of the latter public bodies could re-delegate its rule-making authority. We hold that the rule is invalid for want of authority in IHSAA to promulgate it.

II. *The Rule on Its Merits.* The conclusion just stated disposes of the case, but the parties ask us to deal with the rule on its merits for guidance in promulgation of rules by proper authority. This involves William's charge against the rule on its merits, which we now proceed to consider.

In approaching this charge we emphasize that we have no intention of eroding the statutory powers of duly-constituted state and local school authorities. We repeat the statement of Chief Justice McClain in Kinzer v. Directors of Independent School Dist. of Marion, 129 Iowa 441, 444–445, 105 N.W. 686, 687:

And here it may be suggested that the court should hesitate to interfere with the regularly constituted school authorities in their management of the scholars which are placed under their charge. The Legislature is expressly authorized to provide for the educational interests of the state, in such manner as shall seem best and proper. See article 9 of section 15 of the state Constitution. And in the exercise of this power school districts have been created, authorized to have exclusive jurisdiction in all school matters over their respective territories. Code, § 2743. It is further provided that the affairs of each school corporation shall be conducted by a board of directors. Code, § 2745. And the directors are, as already indicated, expressly authorized to make and enforce rules. It was plainly intended, therefore, that the management of school affairs should be left to the discretion of the board of directors, and not to the courts, and we ought not to interfere with the exercise of discretion on the part of a school board as to what is a reasonable and necessary rule, except in a plain case of exceeding the power conferred.

To that statement we can add only that the State Board of Public Instruction also now possesses statutory rule-making authority over the matter before us.

■ As the Chief Justice stated, however, the courts do intervene if the action of school officials involves "a plain case of exceeding the power conferred." The first main principle involved in considering the validity of a school rule is that the rule must pertain to conduct "which directly relates to and affects management of the school and its efficiency." Board of Directors of Independent School Dist. of Waterloo v. Green, 259 Iowa 1260, 1267, 147 N.W.2d 854, 858.

School authorities operate in a narrower area than do, say, city councils. The latter may ordain laws covering a variety of acts in the community. The former are only concerned, however, with the school and its proper operation, and their authority is

**564**

correspondingly more circumscribed. See 47 Am.Jur. Schools § 173 at 426 ("conduct outside of school hours and school property may subject a pupil to school discipline if it directly affects the good order and welfare of the school"); 79 C.J.S. Schools and School Districts § 496 at p. 445 ("the connection between the prohibited acts and the discipline and welfare of the school must be direct and immediate, not remote or indirect"); Annos. 27 A.L.R. 1074, 41 A.L.R. 1312; Note, 4 Iowa L.Bull. 184. The leading case on the point is Lander v. Seaver, 32 Vt. 114.

 Student misconduct in the classroom obviously affects the operation of the school; misbehavior of a child at home within the family clearly is beyond the concern of the school. Between those extremes lie the cases which more or less affect the operation of the school, and the task is to determine on which side of the line particular conduct falls. A rule has been upheld prohibiting students, who purported to represent their school, from participating in football games against teams of other schools, although the games were neither in school time or on school property. Kinzer v. Independent School Dist. of Marion, 129 Iowa 441, 105 N.W. 686. A rule forbidding fraternities in public schools has been declared valid, although the fraternity members did not hold meetings at school or during school hours. Lee v. Hoffman, 182 Iowa 1216, 166 N.W. 565. A rule declaring married high-school students to be ineligible for interscholastic sports has been enforced, as directly relating to school management and operation. Board of Directors of Independent School Dist. of Waterloo v. Green, 259 Iowa 1260, 147 N.W.2d 854. See also Burdick v. Babcock, 31 Iowa 562.

In a given case, the particular circumstances must be examined. The present case involves the advantages and enjoyment of an extracurricular activity provided by the school, a consideration which we believe extends the authority of a school board somewhat as to participation in that activity. The influence of the students involved is an additional consideration. Standout students, whether in athletics, forensics, dramatics, or other interscholastic activities, play a somewhat different role from the rank and file. Leadership brings additional responsibility. These student leaders are looked up to and emulated. They represent the school and depict its character. We cannot fault a school board for expecting somewhat more of them as to eligibility for their particular extracurricular activities.

 We have no doubt that school authorities may make a football player ineligible if he drinks beer during football season. No doubt such authorities may do likewise if the player drinks beer at other times during the school year, or if he then possesses, acquires, delivers, or transports beer. See O'Connor v. Board of Education of Central School Dist. No. 1, 65 Misc.2d 40, 316 N.Y.S.2d 799. Probably a player shown to have actually violated beer laws during summer vacation, whether convicted in criminal court or not, can be rendered ineligible by school rule. All of these situations have direct bearing on the operation of the school, although the bearing becomes progressively less direct. But we are inclined to think the nexus between the school and a situation like the present one is simply too tenuous: outside of football season, beyond the school year, no illegal or even improper use of beer. We cannot find a "direct" effect upon the school here. School authorities in reaching out to control beer in cases like this one are entering the sphere of the civil authorities. We hold that the rule in question is invalid as beyond the permissible *scope* of school rules.

 The other main principle involved in considering the validity of a school rule is *reasonableness*. The general requirement that a rule promulgated by a governmental subdivision or unit be reasonable applies to school board rules. Board of Directors of Independent School Dist. of Waterloo v. Green, 259 Iowa 1260,

1267, 147 N.W.2d 854, 858 ("our task is to determine whether it is so unreasonable and arbitrary as to be illegal"); 47 Am. Jur. Schools § 46 at 327–328; 79 C.J.S. Schools and School Districts § 495 at 444–445. Various school rules have been held in this state to be unreasonable. Valentine v. Independent School Dist. of Casey, 191 Iowa 1100, 183 N.W. 434; Perkins v. Directors of Independent School Dist. of West Des Moines, 56 Iowa 476, 9 N.W. 356; Murphy v. Board of Directors of Independent Dist. of Marengo, 30 Iowa 429. The requirement of reasonableness applicable to school-board rules applies with equal force to rules promulgated by the State Board of Public Instruction under § 257.-25(10). 2 Am.Jur.2d Administrative Law § 303 at 131–132; 73 C.J.S. Public Administrative Bodies and Procedure § 103 at 421.

 Much of what we have said as to the scope of the rule-making power of school authorities applies to the issue of the reasonableness of a rule itself. In dealing with ineligibility for extracurricular activities as contrasted to expulsion from school altogether, and with students who represent the school in interscholastic activities as contrasted to less active students, school rules may be broader and still be reasonable. Is the instant rule within the bounds of reason?

The rule does not require violation of the criminal law for an infraction to occur, but school rules need not be confined to crimes. To some extent at least, school authorities may base disciplinary measures on immoral acts or on acts definitely contrary to current mores. 47 Am. Jur. Schools § 186 at 433; 79 C.J.S. Schools and School Districts § 503b at 450; Anno. 41 A.L.R. 1312.

This particular rule is not confined to the consumption of beer or even to the acquisition, disposition, possession, or transportation of beer. It imposes ineligibility for mere occupation of a car containing beer with knowledge of the presence of the beer, when the beer is discovered by an officer. School authorities may make reasonable beer rules, but we think this rule is too extreme. Some closer relationship between the student and the beer is required than mere knowledge that the beer is there. The rule as written would even prohibit a student from accepting a ride home in a car by an adult neighbor who had a visible package of beer among his purchases. We realize that the rule has been made broad in an effort to avoid problems of proving a connection between the student and the beer, but rules cannot be so extended as to sweep in the innocent in order to achieve invariable conviction of the guilty. We hold the rule in question is invalid as unreasonable.

Reversed.

All Justices concur except MASON, RAWLINGS and LeGRAND, JJ., who dissent, and McCORMICK, J., who takes no part.