JUSTICE LEAPHART
dissenting.
¶44 I dissent as to issue number two: “May the Livingston School District contract with the MHSA to consent to be bound by the MHSA’s mies?”
¶45 The Court, through legal artifice, concludes that the School District has not unconstitutionally delegated its authority to govern interscholastic activity because, in participating in the MHSA, the School Board makes the rules of the Association its own. I submit that this result may be practical, but it is, nonetheless, a legal fiction.
¶46 The Supreme Court of Iowa addressed a very similar issue in Bunger v. Iowa High School Athletic Ass’n (Iowa 1972), 197 N.W.2d 555. At issue in Bunger was a “Good Conduct” rule of the Iowa High School Association (the “Association”). The Association was an unincorporated association in charge of boys’ athletic events throughout the State of Iowa. Member schools agreed to abide by the constitution and bylaws of the Association. In an effort to address the use of alcoholic beverages by athletes, the Association adopted what was known as the “Good Conduct” rule, which, in turn contained the “beer rule.” The “Good Conduct” rule was challenged by a young athlete who was suspended from playing football for a period of six weeks for being in an automobile containing a case of beer.
¶47 The Iowa Court began its analysis by noting that the legislature provided for school districts to be under the control of directors. The legislature further provided that the affairs of each school were to be conducted by the directors and that the board “shall make rules for its own government and that of the ... pupils ... and require the performance of duties ... imposed by law and the rules.” Bunger, 197 N.W.2d at 559.
¶48 The question before the court was thus posed as follows: Can a school board re-delegate its rule-making power regarding pupils to some other organization? The court held that the legislature had delegated rule-making to the boards, and the general principle is “that while a public board or body may authorize performance of ministerial *103 or administrative functions by others, it cannot re-delegate matters of judgment or discretion.” Bunger, 197 N.W.2d at 560. The court recited the general principle of law expressed in the maxim “delegates non potest delegare,” that a delegated power may not be further delegated by the person to whom such power is delegated.
¶49 Like the Montana High School Association, the Iowa Association contended that the “Good Conduct” rule was actually a rule of each individual board, in that each board agreed to abide by the rules when it joined the Association. “By joining the association, IHSAA says, each board promulgate[d] IHSAA’s rules as its own.” Bunger, 197 N.W.2d at 561. The Iowa court rejected this argument as being inconsistent with the realities of the situation. “Bearing in mind that a school board cannot re-delegate its rule-making power, how can we say that a school which votes against a proposed rule has itself promulgated that rule?” Id. The court reasoned that the schools have no choice as to the rules it will accept. “It must take them all and abdicate its nondelegable responsibility to select the rules it wishes to have.” Id.
¶50 The court further noted that a school which becomes dissatisfied with a rule has no power to repeal the rule. “To say the school can withdraw from IHSAA is no answer. If it leaves IHSAA voluntarily, or involuntarily for violating the rule, its boys’ interscholastic athletic program is at an end.... Its hands are tied. The power is actually in the association, not each school board where the statute places it.” Bunger, 197 N.W.2d at 561.
¶51 The Iowa Court then discussed the fact that Iowa (unlike Montana) has a statute which authorizes schools to belong to qualifying organizations and participate in interscholastic activities sponsored by such organizations. Despite this statutory recognition of organizations such as the Iowa High School Athletic Association, the court concluded that the statute could not be “stretched to mean that schools may turn over their statutory rule-making authority to such organizations.” Bunger, 197 N.W.2d at 562.
¶52 Finally, the Iowa Association argued that the statutes allowed the Association to promulgate rules if approved by the state department of public instruction. The court rejected this contention holding that the law required the state board of public instruction to adopt rules concerning eligibility for interscholastic contests. “Moreover, since promulgation of eligibility rules involves judgment and discretion, ... the State Board cannot re-delegate its rule-making authority ... any more than a school board can re-delegate its rule-making authority....” Bunger, 197 N.W.2d at 563.
¶53 In conclusion, the Iowa Court held:
*104 The rule before us is, in fact, a rule of IHSAA and not of the Waverly-Shell Rock Board of Education or of the State Board. Neither of the latter public bodies could re-delegate its rule-making authority. We hold that the rule is invalid for want of authority in IHSAA to promulgate it.
Bunger, 197 N.W.2d at 563.
¶54 I find the reasoning of the Iowa Supreme Court to be even more compelling in the present case than in the Iowa situation. In Montana, the school board trustees derive their power not from legislation, as in Iowa, but from the state constitution itself. Article X, Section 8, of the Montana Constitution grants school board trustees the power to supervise and control the schools in their district. Further, the Board of Public Education has the constitutional authority to exercise “general supervision over the public school system.” Art. X, Sec. 9(3)(a), Mont. Const. The school boards cannot abdicate their constitutional grants of authority by re-delegating their authority to control and supervise, and thereby determine athletic eligibility decisions, to a voluntary association. Furthermore, it is noteworthy that, in Iowa, the state law recognized the existence of high school athletic associations and allowed such associations to make certain rules subject to approval of the State Board of Public Education. Unlike the situation in Iowa, there is no legislative recognition of high school athletic associations in Montana law. Thus the argument for allowing a Montana school board to re-delegate its rule-making authority to such an association is even more tenuous than in the Bunger case. The Iowa Supreme Court reaffirmed its holding in Bunger in Gabrilson v. Flynn that “[i]t is a fundamental tenet that a school board may not abrogate its power to regulate the affairs of the district to an agent.” Gabrilson v. Flynn (Iowa 1996), 554 N.W.2d 267, 276.
¶55 I understand the practical need to achieve uniformity of eligibility requirements for participation in interscholastic competition. However, that goal cannot be accomplished by permitting constitutionally created school boards to abdicate their constitutional responsibilities to “control” and “supervise” in favor of a private association over which the school boards, individually, have no control. Uniformity of eligibility nales is a question that perhaps can be addressed by the Board of Public Education under its state-wide constitutional power to exercise “general supervision over the public school system.” Art. X, Sec. 9(3)(a), Mont. Const.
JUSTICE NELSON joins in the foregoing dissent of JUSTICE LEAPHART.