Mark E. **FLUITT**, Plaintiff,

v.

The **UNIVERSITY OF NEBRASKA**; Ronald Roskens, its President; Robert Devaney, its Athletic Director; the Big Eight Athletic Conference, an unincorporated voluntary athletic association; and Charles Neinas, its Commissioner, Defendants.

Civ. No. 80–L–33.

United States District Court,
D. Nebraska.

March 28, 1980.

John R. Doyle and J. David Thurber, Lincoln, Neb., for plaintiff.

Richard R. Wood, Lincoln, Neb., for defendants The University of Nebraska, Ronald Roskens, and Robert Devaney.

J. Arthur Curtiss, Lincoln, Neb., Robert E. Northrip, Timothy A. Pratt, for defendant The Big Eight Conference.

## MEMORANDUM

VAN PELT, Senior District Judge.

Plaintiff, a student at the University of Nebraska at Lincoln, originally filed this action January 18, 1980 as a "civil rights action of reverse discrimination" seeking injunctive relief under 42 U.S.C. § 1983, the Fourteenth Amendment to the U. S. Constitution and Title IX of the Higher Education Act Amendments of 1972 at 20 U.S.C. § 1681(a). The defendants are named in the title.

A temporary restraining order, a preliminary injunction and a permanent injunction were each sought to prevent defendants and others from denying plaintiff the opportunity to compete on the University of Nebraska Men's Track Team at a track meet to be held January 26, 1980 and at every meet thereafter during the 1980 men's track season. The prayer also included waiver of a bond and a request for attorneys fees under 42 U.S.C. § 1988.

A hearing was had upon plaintiff's motion for temporary restraining order on January 22, 1980 at which all of the parties were represented by counsel, and evidence was taken. The clerk's notes state: "hearing on application for preliminary injunction set 2–14–80 at 9:30 a. m.; plaintiff given until 1–28–80 to file amended complaint, to be personally served; defendants given until 2–7–80 to answer; preliminary pleas to be filed by 2–4–80; no time given for filing pretrial motions; order to be entered." On February 8, 1980 an order was tendered by counsel for defendants who had been asked by the Court to prepare the same, and was signed by the Court journalizing the proceedings. This order is in accordance with the Court's recollection of his announcement that the hearing set for February 14 was not limited to a hearing on a preliminary injunction and was to be a trial on the merits.

The order sets forth that the Court, after receiving evidence and listening to the arguments, found that plaintiff had not shown that he would suffer irreparable injury in event a temporary restraining order

was not issued, and denied plaintiff's motion for such order. The Court further ordered that a hearing should be held immediately to determine whether a preliminary and permanent injunction should issue and set the matter for trial at 9:30 a. m. on February 14, 1980. The order further provided:

> "It is the further order of this Court that the Plaintiff file any amendments to its original complaint on or before January 28, 1980, and that the Defendants shall have until February 7, 1980 to answer the Plaintiff's original Petition or any amended Petition filed herein. It is the further order of this Court that all motions to be filed in this matter be so filed on or before February 4, 1980. It is the further order of this Court that any and all briefs to be filed in this matter be so filed on or before February 14, 1980."

An amended petition was filed January 28, 1980. It alleged that this action was "an action for the denial of equal protection and due process of law." Injunctive relief under the sections above noted in outlining the original complaint was sought. There was also added to the language of the original complaint, in setting forth in the preliminary statement the reasons why injunctive relief was sought, the following: "and for maintaining rules of procedure which deny and have denied this Plaintiff due process of law." The case was tried on February 14, 1980 and then continued until February 21, 1980, on which day the parties completed the introduction of evidence. A post-trial briefing schedule was agreed upon and the briefs have now been filed. The case stands submitted.

Plaintiff requested the court at or near the conclusion of the hearing to amend the complaint to allege a denial by defendants to plaintiff of his right to equal protection of the law by failing to provide him an opportunity to participate in indoor track and outdoor track separately as two different sports as is provided for women at the University of Nebraska and to claim a violation of due process because plaintiff did not have notice of the Big Eight rules relating to hardship. Ruling was reserved on this matter. It is discussed hereafter in this memorandum.

### FINDINGS OF FACT

Plaintiff, Mark Fluitt, who will herein be called "plaintiff" or "Fluitt", is a fifth year student at the University of Nebraska. He entered the University in the fall of 1975 on an athletic scholarship for men's track. In September of 1975 he attended regular workouts and ran against his fellow teammates. In late September of 1975 he began experiencing pain when he ran. However, he was able to compete in one cross country meet in September and three cross country meets in October. The pain became worse in November when the cross country track season was over and he began running indoors.

In November he complained of the pain to Frank Sevigne, coach of the men's track team. The plaintiff also saw George Sullivan, the head trainer who treated him, and Dr. Clare, an orthopedic surgeon. Clare said he was suffering from what is commonly known as severe shin splints. Despite the pain, the plaintiff competed in the 1000 yard run in a triangular meet between Kansas, Oklahoma and Nebraska at Lawrence, Kansas, in January of 1976. This was the last meet in which he competed as a freshman. He did not work out the remainder of the year. The following three years he overcame the injury and was able to compete. He received an athletic scholarship for the four years prior to the 1979–80 season.[1]

In April of 1979, plaintiff approached Coach Sevigne and asked if Sevigne could get him an additional year of eligibility. Fluitt testified on direct examination that prior to talking with Coach Sevigne he did not know the application would be untimely, but that after talking with the Coach he

---

1. The first two years Fluitt had a full scholarship; the second two years it was a partial scholarship covering full tuition, fees, books, and a portion of room and board amounting to about 80% of a full scholarship.

realized it would be out of time. He testified that he was not sure of when he became aware that there was such a thing as hardship eligibility, but that he "probably" found out about hardship cases his sophomore year. The plaintiff's own testimony was conflicting as to whether he knew the Big Eight had rules which governed the competitions when he was a freshmen. However, it is clear that while he personally was never handed a copy of the Big Eight rules, copies were at all times available through the coaching staff. Plaintiff did not attempt at any time throughout his college athlete years to inform himself of any of the Big Eight Rules.

Fluitt testified that he signed a prepared form designated "Petition for Exception". It contained a paragraph stating: "Please attach other information which may be pertinent in considering this request." No additional information was attached. Fluitt stated he did not have any additional information he wanted to present to the Big Eight Conference. This petition was sent along with a letter from Coach Sevigne for consideration by Big Eight Commissioner Charles Neinas. Neinas read the letter from Coach Sevigne to the Faculty Representatives at the May meeting of the Conference. The Faculty Representatives are a group consisting of one faculty professor from each of the eight schools in the conference. According to the conference rules, they

> constitute the legislative body of the Conference, shall formulate and publish rules and regulations for the government of the Conference, shall arrange for an annual audit of the accounts of the Conference, and shall have final authority on all matters of concern to the Conference.

Regulations and Rules, Big Eight Conference, Rule 1.601. A vote was taken by the faculty representatives on Fluitt's application for a hardship exception, and for an additional year of eligibility. The outcome of the vote was to deny Fluitt an extra year of eligibility.

Neither Coach Sevigne nor Fluitt was notified of the date the hearing would be held on the eligibility request. At this point in time Fluitt did not have an attorney. The only person at the May meeting who supported the hardship request was the University of Nebraska's faculty representative, Dr. Keith Broman. Dr. Broman was the only faculty representative who voted to grant the plaintiff an additional year of eligibility.

Coach Sevigne received a long distance phone call from Dr. Broman, who was at the meeting site, informing him that the request had been turned down. Coach Sevigne testified that he immediately informed Fluitt of the action. Fluitt received no other official notification of the action. During the summer plaintiff obtained counsel to represent him. Counsel requested an appearance before the Big Eight Conference to make a presentation with regard to Fluitt's application for an additional year of eligibility. This request was granted and counsel, who is one of counsel appearing in this case, appeared at the November 30 meeting of the faculty representatives where he made a 30 to 45 minute presentation. Commissioner Neinas testified without contradiction that the faculty representatives did not refuse to hear anything that plaintiff's counsel wanted to offer, and that there was no request that plaintiff personally be present at this meeting and no additional documents were distributed. After the presentation, Nebraska's faculty representative made a motion to grant the request for an additional year of eligibility. It died for lack of a second.

The University's men's and women's track teams are governed by separate sets of rules. The men's team is governed by the Big Eight Athletic Conference rules, which incorporate the National Collegiate Athletic Association (hereinafter NCAA) rules. The women's track team is governed by rules promulgated by the Association for Intercollegiate Athletics for Women (AIAW). The two sets of rules are not diametrically opposed to one another yet they are not identical. Neither the Big Eight rules nor the AIAW rules totally exclude men or women from participation under their operation.

Big Eight Rule 2.1 provides:

The eligibility rules of this Conference shall apply to every student of member institutions participating in any intercollegiate athletic event recognized by this Conference. Wherever the terms, "man", "men", "he", "his", "squad man" or "squad men", herein appear, it is to be understood that reference is to both male and female student-athletes or prospective student-athletes.

Mr. Neinas testified and the court finds that women have competed under the Big Eight rules. In 1973–74 the University of Oklahoma had a female diver on its men's team. The AIAW rules indicate that men shall be included on women's intercollegiate athletic teams when required by applicable law. The standard for determining whether such male participation is required is the provisions of Title IX of the Education Amendment of 1972, 20 U.S.C. § 1681(a). See Exhibit 4, AIAW Handbook 1979–80 at 30.

Plaintiff alleges that because the Big Eight and the AIAW eligibility rules are different both in formulation and operation that he has been denied equal protection of the law and that Title IX of the Education Amendment of 1972 has been violated. The relevant eligibility rules of both associations are set out in an appendix attached hereto and will be further referred to in the Discrimination section of this memorandum. Both associations basically require any requests for an additional year of eligibility to be made during the academic year in which the injury or hardship occurred (although the timing for submission of such requests varies slightly). Both associations have, in fact, granted late applications. Dr. Keith Broman, the University of Nebraska's faculty representative, testified that there had been "a couple of exceptions in the last four or five years" to the time requirements for filing hardship applications. Plaintiff demonstrated through the testimony of Barbara Hibner, the Assistant Women's Athletic Director, that two hardship eligibility waivers had been granted by the AIAW National Ethics and Eligibility Committee to women at the University of Nebraska. One case involved Sharon Slattery, a member of the

women's golf team, who was injured in the 1977–78 season and never participated that season in any meets. She was granted another year of eligibility on August 3, 1979. See Exhibit 7. The other instance involved Patty Carmichael-Girard, who on June 13, 1978 was granted an additional year of eligibility to replace the 1975–76 academic year when she was injured while attending the University of Illinois.

Fluitt testified that he is currently employed by the University of Nebraska Athletic Department as an assistant track coach. He further testified that he was receiving $270 per month and was not sure if he was paid on a twelve month or nine month basis. He indicated his yearly compensation from coaching was between $2000 and $2500. The court sustained an objection to Exhibit 13 which purported to show his pay and other conditions of employment. Fluitt admitted that he would not be able to hold the coaching position as an athlete, but that he would rather be an athlete than work. Fluitt testified that his duties as assistant track coach included cross country coaching when he spent three hours per day, including Saturdays, running, marked courses for meets, and generally worked 20 to 25 hours per week.

## JURISDICTION

Plaintiff claims this court has jurisdiction by virtue of 42 U.S.C. § 1983 and 1988, 28 U.S.C. § 1343 and 20 U.S.C. § 1681(a). The basis for civil rights actions under §§ 1983 and 1343 is a deprivation under color of state law or regulation. University of Nebraska Athletic Director Robert Devaney testified that the University of Nebraska was a state institution. It has, in essence, delegated most of its rule-making authority in the area of athletics to the Big Eight Conference which is made up of eight state supported schools, and the NCAA, whose rules are incorporated into the Big Eight Conference. Most courts which have considered the question have found that such Associations fall within the test of acting under color of state law. *See Associated Students, Inc. v. NCAA*, 493 F.2d 1251, 1254

(9th Cir. 1974); *Howard University · v. NCAA*, 510 F.2d 213, 220 (D.C. Cir. 1975); *Hennessey v. NCAA*, 564 F.2d 1136, 1144 (5th Cir. 1977); *Regents of University of Minnesota v. NCAA*, 560 F.2d 352, 364–65 (8th Cir. 1977); *Stanley v. Big Eight Athletic Conference*, 463 F.Supp. 920, 927 (W.D. Mo.1978). *Accord, Rivas Tenoria v. Liga Atletica Interuniversitaria*, 554 F.2d 492, 496 (1st Cir. 1977) which involved a Puerto Rican athletic association somewhat similar to the NCAA.

However, the brief of the Big Eight Conference and Charles Neinas raises the question of whether there is a substantial federal question present. This is also necessary to give the court jurisdiction. These defendants cite *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974) in support of their claim that federal courts are without power to hear suits which are devoid of merit or plainly insubstantial. The defendants argue that the Tenth Circuit has

> consistently found that, unless clearly defined constitutional principles are at issue, the suits of student-athletes displeased with high school athletic associations or NCAA rules do not present substantial federal questions. *See Colorado Seminary v. NCAA*, 570 F.2d 320 (10th Cir. 1978); *Albach v. Odle*, 531 F.2d 983 (10th Cir. 1976); *Oklahoma High School Athletic Association v. Bray*, 321 F.2d 269 (10th Cir. 1963).

*Wiley v. NCAA*, 612 F.2d 473 (10th Cir. 1979).[2]

*Colorado Seminary, supra*, involved a claim by the university and several of its athletes that they were denied procedural and substantive due process and equal protection of the laws as a result of sanctions imposed by the NCAA against the university's hockey team for allowing ineligible student athletes to compete. The lower court

(D.C., 417 F.Supp. 885) found, and the circuit court agreed, that there was no constitutionally protected property or liberty interest in participation in intercollegiate athletics which would give rise to a procedural due process claim and that nothing in the regulations or treatment meted out by the NCAA amounted to unconstitutional discrimination against classes of students or the university itself. *Albach, supra*, involved a New Mexico Activities Association transfer rule; *Bray, supra*, involved a high school athletic association residency rule; and *Wiley, supra*, involved an ineligibility ruling where the athlete had received more financial assistance from various sources than was allowed under the NCAA rules. It should be noted that the *Albach* court has distinguished cases involving sexual discrimination, alienage discrimination, racial discrimination, and invasion of marital privacy as presenting clearly defined constitutional principles which would present a federal question. *Id.* at 984.

■ Other than the 10th Circuit, the federal courts are few which have addressed the issue of a substantial federal question.[3] However, for two reasons, I feel compelled to reject defendants' argument and find that there is a substantial question here. The first reason is that *Hagans v. Levine, supra*, makes it clear that whether an issue is absolutely devoid of merit, wholly insubstantial or obviously frivolous, is to be judged by a standard set forth in *Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 859, 35 L.Ed.2d 36 (1973), which is as follows:

> The limiting words "wholly" and "obviously" have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably

---

**2.** It should also be noted that the most recent Tenth Circuit case was considered *en banc*. Two judges dissented. Both thought that the equal protection argument should be considered as raising a substantial federal question.

**3.** The Ninth Circuit in *Associated Students, Inc., supra*, mentions the substantial federal question standard but does not decide whether it exists in the case, merely assuming that even if plaintiffs had rights or privileges protected by the Constitution there had been no violation of the Equal Protection Clause.

render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial . . . .

It does not appear to me that the United States Supreme Court has spoken so clearly on the issues raised by this plaintiff that the subject is foreclosed. Secondly, I would be unable to say that on its face plaintiff's complaint is frivolous or wholly insubstantial even under the more generally accepted definition of those terms. The claim alleged that two people in the identical situation are treated differently solely on the basis of their sex, and sex discrimination is one of the categories even the Tenth Circuit recognized as presenting a substantial federal question.

■ Finding jurisdiction, the next question that arises is whether there is a showing of irreparable injury sufficient to grant a permanent injunction. The only relief requested in this case has been injunctive in nature, other than a request to waive a bond and for an award of attorneys fees. The plaintiff has alleged that he has been and will continue to be irreparably damaged by virtue of the fact that (1) he will lose his full track scholarship in the amount of $3,200; (2) he will be denied the opportunity to compete on the University of Nebraska Track Team; (3) he will be denied the opportunity to qualify for the 1980 Olympic trials and (4) he will be unable to defend his Big Eight Athletic Conference Track Championship Title in the "mile."

I confess to having some difficulty finding irreparable injury to the plaintiff under the facts of this case. With regard to the loss of a full track scholarship in the amount of $3,200, it appears that that amount is rather speculative. Fluitt has already had a track scholarship for four years, the last two of which were not full scholarships. There are a limited number of scholarships available, or money for such scholarships. It was not shown that the University had any extra money which it had not already awarded to other athletes or that Fluitt had any reasonable expectation of receiving a full scholarship.

As it is, he is currently employed by the University receiving an amount which would be almost the equivalent of an 80% partial scholarship, such as he had the last two years while attending, and competing for, the University. There is no claim he cannot now afford to attend the University.

The plaintiff admitted during his testimony that he is not precluded from qualifying in the 1980 Olympic trials simply because he is not a member of a university track team. The plaintiff has not specified what particular injury will occur by virtue of the fact he is no longer on the track team or will be unable to defend titles he has won. Presumably this might prevent him from winning awards or medals, but unlike so many of these cases involving football, basketball or hockey, where there is the hope of being drafted by a professional team, such recognition does not appear to be essential to the development of plaintiff's career. If the plaintiff were considering a coaching career, of which there is no evidence in the record, it would seem that the most valuable asset would be his coaching experience and not any competition or awards. Thus, while running in competition for Nebraska may be something that plaintiff enjoys doing and is now precluded from doing, I cannot conclude irreparable injury has occurred or will occur in the future.

In addition, it appears that even were the defendants enjoined from prohibiting the plaintiff from competing due to the challenged eligibility rules, he would be ineligible to compete at this point because by coaching at the University of Nebraska he has lost his student athlete status. NCAA Constitution 3–1–(f)–(1) provides:

> A student-athlete may serve as a coach or an instructor for compensation in a physical education class outside of his institution in which he teaches sports techniques or skills or both, but he shall not be so employed to coach or teach in his sport. He shall not be employed in or by his institution to teach physical education classes or coach any sport.

The NCAA Constitution further provides that:

A student-athlete who receives compensation prohibited under this legislation no longer shall be eligible for participation in intercollegiate athletics . . . .

NCAA Constitution 3–1–(f). This case, as above suggested, has been fully briefed and argued on the merits. The court has determined that it is unnecessary to reach the merits because (1) there is no irreparable injury and (2) the case is moot in the sense that it is inescapable that this plaintiff is no longer eligible to compete as a student athlete. Should an appeal be desired, this Court is willing to go further and state that even if I were to assume that the plaintiff could overcome the two hurdles mentioned above, I would still find that there has been no violation of any constitutional or statutory law as alleged in the Amended Complaint.

## DUE PROCESS

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." In order for plaintiff to prevail on his due process claim, he must prove a property interest as alleged in the complaint. The concept of a property interest was explored in *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), which stated:

Certain attributes of "property" interests protected by procedural due process emerge from [our] decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

In *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), a case involving the suspension of Ohio public high school students from school without a hearing, the Court found that on the basis of state law the students had legitimate claims of entitlement to a public education. There were statutes directing authorities to provide a free education to all residents and there were compulsory attendance laws.

The case now before us deals with athletics, not the total educational package, and is not a compulsory attendance type of situation. The only state law the plaintiff points to which creates a property interest is a statute dealing with the University of Nebraska, which provides:

No person shall be deprived of the privileges of this institution because of age, sex, color or nationality.

Neb.Rev.Stat. § 85–116 (Reissue 1976). However, it is undisputed that plaintiff was not denied eligibility by the Big Eight Conference because of his age, sex, color or nationality.

■ There have been both state and federal cases involving athletics in which the courts have found that a property interest exists. *See Teare v. Board of Education*, No. CV 77–L–190 (D.Neb. Sep. 16, 1977); *Compagno v. The Nebraska School Activities Association*, No. CV 77–L–192 (D.Neb. Sep. 16, 1977); *Braesch v. DePasquale*, 265 N.W.2d 842, 200 Neb. 726 (1978); and *French v. Cornwell*, 276 N.W.2d 216, 202 Neb. 569 (1979). However, these cases note that the state of Nebraska, as a part of its public education program, has elected to provide athletic opportunities for its students. The plaintiff urges that this court should go one step farther and find a property interest in college athletics.[4] I have

---

4. Plaintiff has pointed out that the case of *Behagen v. Intercollegiate Conference of Faculty Representatives*, 346 F.Supp. 602 (D.Minn.

1972) did find a property interest in participating in college athletics. The court noted that:

difficulty equating the two situations; a student is automatically entitled to a high school education by virtue of state law, but there is no automatic entitlement to a college education. Our own circuit court of appeals specifically declined to decide whether there is a property interest in intercollegiate basketball participation in *Regents of University of Minnesota v. NCAA*, 560 F.2d 352 (8th Cir. 1977) despite the fact that the lower court had found such a property interest.[5] With regard to a scholarship, the NCAA is not requiring the University to cancel a scholarship plaintiff had already received. Likewise, I cannot find the plaintiff proved he had a reasonable expectation of receiving a scholarship for a fifth year, as he himself testified that it was at the discretion of the coach whether you received a full or partial scholarship and that you were informed of whether you had received a scholarship when the papers

> While "big time" college athletics may not be a "total part of the educational process," as are athletics in high school, . . . nonetheless the opportunity to participate in intercollegiate athletics is of substantial economic value to many students. . . .
>
> . . . It has also been held that high school students' interests in participation in athletics are so substantial that they cannot be impaired without proceedings which comply with minimum standards of due process. *Kelley v. Metropolitan County Board of Education of Nashville*, 293 F.Supp. 485 (M.D. Tenn.1968)]. Surely, the interests of college athletes in participating in activities which have the potential to bring them great economic rewards are no less substantial.

*Id.* at 604. I find the *Behagen* case distinguishable primarily on the ground that it was decided prior to *Goss v. Lopez, supra*, which specifically defined property interests as stemming from independent sources such as state law. I would also note, as I have already pointed out in the section dealing with irreparable injury, that we do not have a plaintiff here who is playing a sport where he is likely to be awarded any professional multimillion dollar contract such as the *Behagen* court envisioned.

5. With regard to whether the plaintiffs had a property interest in intercollegiate basketball participation, the court of appeals observed in footnote 22 at 366:

> The correct resolution of this issue is uncertain, although we do note that two courts of appeals have held that participation in

arrived at home during the summer. This would not seem to be the type of property interest which the plaintiff could have relied upon until he was actually notified that he had received a scholarship.

■ Even if I were to assume a property interest existed in this case, I would still find that the plaintiff had been accorded due process. Plaintiff has alleged that he was denied due process because he was unaware of the eligibility rules and requirements for submission of hardship applications. *Compagno, supra*, involved a residence rule which was applied to a student who moved from Colorado and had no knowledge of the rule. Judge Urbom found that the

> initial burden of learning of a residence requirement for eligibility in a voluntary extracurricular activity rests upon the

school athletics is not by itself a constitutionally protected property interest. *Albach v. Odle*, 531 F.2d 983, 984–85 (10th Cir. 1976); *Parish v. NCAA*, 506 F.2d 1028, 1034 (5th Cir. 1975); *Mitchell v. Louisiana High School Athletic Ass'n*, 430 F.2d 1155, 1157–58 (5th Cir. 1970); see *Howard University v. NCAA*, 166 U.S.App.D.C. 260, 510 F.2d 213, 222 (1975). As noted by the district court, 422 F.Supp. 1158 at 1161, the Supreme Court of Minnesota has not decided whether such participation is a protected property interest under Minnesota law.

There is some indication in the caselaw that the continued maintenance of a scholarship may in some circumstances constitute a constitutionally protected property interest. See *Parish v. NCAA, supra*, at 1034 n. 17; *Colorado Seminary v. NCAA*, 417 F.Supp. 885, 895 (D.Colo.1976). Here, however, the Association represents that it does not require a member institution to cancel financial aid when it declares a student-athlete ineligible. The University takes a contrary position, arguing that Association rules, by reference to Big Ten Conference rules, do require the member institution to cancel financial aid. The Association in turn replies, *inter alia*, that neither it nor the Big Ten has instructed the University to cancel financial aid to the student-athletes here involved. The pertinent Big Ten rules are not included in the record, and the entire issue can properly be resolved, if it need be resolved at all, only on the basis of a more developed factual record.

new student seeking to participate for the first time if the rules are reasonably accessible. Whether the rules are reasonably accessible depends upon whether the intended meaning—that is, the meaning they will be given by the authorities administering them—is likely to be obtained readily upon inquiry of a convenient source.

The facts here show without question that the plaintiff made no attempt to find out about the eligibility rules of the Big Eight until more than three years after his injury had occurred. Simply because he was not handed a copy of the rules does not mean the rules were inaccessible. It is obvious that Coach Sevigne was familiar with the rules because when plaintiff approached him about hardship eligibility, he was informed by Sevigne that the request was not timely. Sevigne further testified that he had a copy of the Big Eight Rules, and that several other copies were available. I find that had Fluitt had any desire to learn of the eligibility rules of the Big Eight Conference, he could have done so without difficulty. Furthermore, in *Regents of the University of Minnesota, supra,* the court found that there was no general requirement the student athletes should know at the time of an offense or infraction that the conduct was proscribed and would render them ineligible. Similarly, it would seem that there is no requirement that a student be aware of the procedural rules before they can be invoked. Furthermore, it seems inordinately naive on Fluitt's part not to realize that he was participating under Big Eight Rules and that there might be rules concerning hardship or eligibility.

■ Plaintiff further alleges that there was a denial of due process in that the Big Eight Conference did not follow their own procedures for ruling on eligibility. Plaintiff specifically refers to the rules under 2.12, as shown in the appendix. These rules provide that the commissioner shall have the authority to rule upon any eligibility matter, and that the eligibility committee may be requested by the faculty representative to serve as an appeals body on any ruling by the commissioner subject only to the vote of the faculty representatives as a whole. However, under the eligibility rules, hardship requests must be presented during the year in which the injury occurred or "no additional eligibility for reasons of hardship may be granted." Rule 2.504. The Big Eight Rules also provide at 5.3 that:

> The faculty representatives shall have full power to act on all special cases not covered in these rules.

It was Commissioner Neinas' testimony that he has never ruled on hardship matters falling under Rules 2.5 or 5.3, and that as far as eligibility rulings are concerned under 2.12 the faculty representatives have reserved unto themselves all determinations of hardship. Mr. Neinas has served as Commissioner of the Big Eight for nine years, and it is his understanding that this procedure has been followed for at least the past 25 years. Without getting into a determination of legislative intent in the drafting of the rules, suffice it to say that Mark Fluitt's case falls outside the ordinary eligibility rules because it was not timely and would apparently fall under Rule 5.3 which gives the faculty representatives power to hear special cases. Any denial of due process which may have occurred at the time of the first hearing was without question remedied at the second hearing. Fluitt's attorney was present and argued his case for him. Fluitt ostensibly had notice of the hearing since his attorney did and Fluitt could have attended. Counsel was free to present any evidence he desired. A new vote was taken by the faculty representatives. Under the circumstances, I find it difficult to conceive of what more could have been required.

## DISCRIMINATION

■ Plaintiff alleges that he has been discriminated against under the Equal Protection Clause of the Fourteenth Amendment and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) by virtue of the fact that if he were a woman competing at the University under the AIAW rules he would not have been ruled ineligi-

ble to compete because he did not timely submit a hardship request. The facts simply do not support this allegation.

The AIAW rules provide that:

Withdrawals from the Affidavit of Eligibility must be submitted immediately (or not later than two weeks after the national championship). Submit the withdrawals to the state and regional Ethics and Eligibility Chairperson and to the national office.

Thus, plaintiff would not have met the deadline for withdrawals under the women's rules. Waivers in the event of hardship are considered only by the AIAW Ethics and Eligibility Committee, not the regional or state Ethics and Eligibility Committees. Granted, there is an appeals board, but there is nothing in the rules themselves which indicate that an automatic waiver is granted. I cannot assume that such waivers are automatic from the fact two specific cases granting late waivers were brought to the court's attention. There was testimony that the Big Eight had likewise upon occasion granted late hardship requests. It appears that regardless of whether the Big Eight or the AIAW rules are followed, rulings on an extra year of eligibility are dependent upon the facts of each case. Furthermore, neither set of rules are discriminatory on their face or in application—the AIAW rules apply to both men and women as do the Big Eight Rules. Plaintiff alleges that the same rules should be applied to men and women, but there is simply no showing that applying the same rules would produce different results. Therefore, I find no merit in either the equal protection argument or plaintiff's Title IX theory. I express no opinion on whether it is permissible for the University to apply regulations to men's and women's teams which would produce different eligibility results.

### REQUEST TO AMEND COMPLAINT TO CONFORM TO THEORY AND PROOF AT TRIAL

█ Plaintiff during the trial added two additional theories of recovery to his arse-

nal. These were that (1) plaintiff was denied due process of law because he did not have knowledge of the rule requiring the filing of hardship requests in the year of injury, and (2) that the Big Eight's failure to treat indoor and outdoor track as separate sports, as it is in women's athletics, discriminated against him on the basis of sex. I reserved ruling on the motion. The defendants have argued that they were prejudiced by the raising of these theories at the time of trial. They urge that because of the expedited briefing schedule, they relied on the claims plainly alleged in the complaint and amended complaint on file. There is merit to this argument that plaintiff should have made such an amendment in his amended complaint. If this had been done defendants would have had a few more days in which to prepare. Because of the finding that plaintiff is not entitled to injunctive relief because there is no irreparable injury, plaintiff could not prevail on these two claims and defendants cannot be prejudiced by such amendment. If plaintiff still desires to amend the complaint, for the sake of the record, he shall have five days from the date of the order next mentioned in which to do so.

### CONCLUSION

For all of the foregoing reasons, including the finding that there has been and will be no irreparable injury and that plaintiff has not prevailed on the merits of the claim raised in the amended complaint, a separate order will this day be entered denying the plaintiff any relief. Each party shall bear their own attorneys fees and costs.

### APPENDIX

### APPLICABLE BIG EIGHT RULES CONCERNING ELIGIBILITY AND HARDSHIP WAIVER

**2.5 Hardship Cases.**

**2.501** If a student (including one with freshman academic classification) is prevented by injury or illness from competing in more than two football games or in more than 20 percent of his institution's

completed events in his sport, provided the injury or illness occurred in the first half of the season and resulted in incapacity to compete for the remainder of the season, the competition shall not count as one of the allowable years of competition as defined in 2.401. The purpose of this rule is to allow an additional year of athletic competition, but this privilege shall be granted only once during a student's college career. *(Revised, Par. 1913, (7), (e), May, 1968) (O.I., Appendix A, (1), March, 1973) (Revised, Par. 2448, (1) and (2), Feb., 1975) (Revised, Par. 2735, (4), March, 1979, and Par. 2757, (3), May, 1979) (NCAA Bylaws, Art. 4, Sec. 1, (d), (2))*

**2.502** The following additional conditions must be met before the student may be considered for a hardship exception:

**2.5021** The injury or illness occurred during the first half of the schedule of the sport for which the student is eligible. In the sport of football, such injury or illness must occur prior to the sixth game of the season. *(Revised, Par. 2183, (2), Dec., 1971)*

**2.5022** The student is eligible for the additional year of competition under all other rules of the Conference, such as academic standing, undergraduate status, the five-year rule, etc.

**2.5023** The director of athletics of the institution concerned shall:

**2.50231** Furnish the Conference office with a report from a qualified physician that the student cannot or should not compete in the sport in which he was injured for the remainder of the school year. This report should be furnished prior to the submission of the sport's participation report. *(Revised, Par. 2220, (5), March, 1972)*

**2.50232** Note on the sport's participation report that the student is subject to the provision of Conference Rule 2.5. (See Par. 6.503)

**2.5024** The injury or illness occurred during the time the student was a member of a varsity or junior varsity team of a member institution in a rec-ognized Conference sport. *(Revised, Par. 2434, (3), Dec., 1974) (Renumbered, Par. 2636, (4), Oct., 1977)*

**2.503** Freshman whose hardship requests are granted will have four years of eligibility remaining after the year in which the hardship is granted. An incoming freshman who sustains an injury in football practice prior to the first day of classes and such injury prevents him from attending the first semester or quarter of the academic year may be considered a midyear enrollee for eligibility purposes and be classified as a freshman the following fall. In applying Conference Rule 2.404, the student's eligibility shall be computed from the beginning of the first semester or quarter of the academic year in which he normally would have enrolled if he had not been injured. *(Adopted, Par. 2276, (6), Dec., 1972) (O.I., Appendix B, (6), Oct., 1973) (Revised, Par. 2448, (1), Feb., 1975) (O.I., Par. 2448, (2), Feb., 1975)*

**2.504** An institution shall present to the commissioner any requests for additional eligibility because of hardship during the academic year in which the injury or illness of the student-athlete occurred. If the request is not presented in that academic year, no additional eligibility for reasons of hardship may be granted. *(Revised, Par. 2466, (3), May, 1975)*

*(Adopted Par. 494, Feb., 1954) (Revised, Par. 560, Dec., 1954) (Revised, Par. 1336, March, 1962) (Revised, Par. 1455, Dec., 1962) (Revised, Par. 1503, March 1963) (Revised, Par. 1847, (1), (b), May, 1967) (Revised, Par. 1913, (3), May, 1968) (O.I., Par. 2243, (2), May, 1972) (NCAA Bylaws, Art. 4, Sec. 1, (d), (2))*

\*　　\*　　\*　　\*　　\*　　\*

**2.12 Eligibility Rulings.**

**2.1201** The commissioner shall have authority to rule upon any eligibility matter related to foregoing Section 2 of the Conference rules and regulations. *(Adopted, Par. 1667, (1), August, 1964)*

**2.1202** The Eligibility Committee, upon request of the commissioner, shall be called upon to assist the commissioner in

the determination of any eligibility matter. *(Adopted, Par. 1667, (1), August, 1964)*

2.1203 The Eligibility Committee may be requested by an institution's faculty representative to serve as an appeals body on any eligibility ruling of the commissioner. Such a request shall be submitted to the commissioner, with copies to members of the Eligibility Committee. *(Adopted, Par. 1667, (1), August, 1964)*

2.1204 The Eligibility Committee shall have final jurisdiction, subject only to the vote of the faculty representatives as a whole, on an appeal of any eligibility ruling submitted to it in accordance with 2.1203 above. *(Adopted, Par. 1667, (1), August, 1964)*

\*    \*    \*    \*    \*    \*

**5.3 Special Cases.**

The faculty representatives shall have full power to act on all special cases not covered in these rules.

## APPLICABLE AIAW RULES CONCERNING ELIGIBILITY AND HARDSHIP WAIVER

Section 1. REGULATIONS GOVERNING ELIGIBILITY OF STUDENT–ATHLETES

B. USE OF A FULL YEAR OF ELIGIBILITY

\*    \*    \*    \*    \*    \*

2. *A year of eligibility has not been used:*

a. Injury or Illness in First Half of Season

A player who is injured or becomes ill during the sport season and has competed in no more than 20% of the school's events prior to the injury or illness will not have used a year of eligibility, provided the injury or illness occurred in the first half of the season and the athlete does not compete for the remainder of the season. (D.A. 1/79)

b. Verification of illness or injury by a physician must be submitted to the AIAW national office. Use the AIAW Injury/Illness Report Form, p. 73. (D.A. 1978 & E&E Committee 5/78)

\*    \*    \*    \*    \*    \*

G. PROCEDURAL REGULATIONS FOR INSTITUTIONS

\*    \*    \*    \*    \*    \*

e. Withdrawals from the Affidavit of Eligibility

Withdrawals from the Affidavit of Eligibility must be submitted immediately (or not later than two weeks after the national championship). Submit the withdrawals to the state and regional Ethics and Eligibility Chairperson and to the national office. The request *must* include documentation of circumstances supporting the request. (E.B. 10/76)

Notes: 1) Failure to submit requests for withdrawals within the time limit specified will necessitate filing a waiver request to remove the name from the Affidavit of Eligibility (E.B. 10/76)

2) In case of injury or illness, a physician's verification of the injury or illness must accompany the request for withdrawal. (E.B. 10/76—D.A. 10/78)

3) Once a student has participated in one event, or has been ready and available to participate (with name on the roster for her first event) her name may *not* be withdrawn without a waiver from the E&E Committee inasmuch as she has used a year of eligibility. (E.B. 10/76)

SECTION V. WAIVER REQUESTS, INTERPRETATIONS, AND REFERRAL PROCEDURES

A. REQUESTS FOR WAIVER OF POLICIES OR REGULATIONS

1. *Filed with AIAW E&E Committee*
All requests, on behalf of student athletes for waiver of policies or regulations, unless otherwise provided for, must be filed with the AIAW Ethics and Eligibility Committee and shall not be considered by regional Ethics and Eligibility Committees. (Initial Policy 1972 and E&E Committee 1/77)

a. Waiver Requests from Student-Athletes

1) Right of Student-Athlete to File

Any student-athlete who believes a rule relating to her eligibility should be waived (e. g. normal progress, additional year of eligibility, transfer/financial aid regulation, restoration of amateur status, etc.) may request waiver from the AIAW Ethics and Eligibility Committee. (Initial Policy 1972)

2) Procedure

Such requests for waiver *must* be filed on the "Waiver Request Form" on page 72 in the Appendix. Send the Waiver Request Form and a copy of all documentation to *each* of the five (5) members of the E&E Committee at their home institution (see page 6 for addresses) and to the Administrative Assistant for E&E at the AIAW national office. The form must be completed and include the signatures of the student, coach, athletic director, and voting representative. (E&E 5/74 and 5/77) The completed form must be accompanied by the following: (E&E 1977)

a) A statement by the student-athlete with verification of any fact which demonstrates extenuating circumstances, including, if relevant, verification of injury or illness relied upon.

b) A statement by the Coach and/or Athletic Director with verification of such facts relied upon.

c) Any materials which may assist the AIAW Ethics and Eligibility Committee in reaching a decision.

d) In requests involving the transfer/financial aid regulation, in addition to the above, and when appropriate to the individual case, the important documents, should include: (a) statement from the former athletic department, (b) institutional verification that the new major course of study is not available, (c) evidence of financial need, (d) data sheet chronologically arranged to cover initial contact between athlete and institution until actual enrollment, including activity of the former institution (if involved in situation), the transfer institution, and the student-athlete. (E&E Committee 1/77)

Note: The Ethics and Eligibility Committee does not automatically grant waiver for "change in academic program." Additional criteria are used, as in all waiver cases. (E&E Committee 1/78)

b. Time Table for Waiver Requests

1) Three Week Minimum

The Ethics and Eligibility Committee requires at least three weeks after receipt of complete information to formulate a decision. (E&E Committee 10/76)

Note: The time necessary for formulation of a decision can be increased substantially if information is lacking or additional material is necessary.

2) File Prior to Sport Season

All requests for a waiver related to a particular sport season should be completed before the commencement of the season.

3) Complete Waivers before Transfer

All requests for waiver by transfer students should be completed before the transfer process commences, if the student's decision is in any way dependent upon the outcome of an appeal. (E&E Committee 10/76)

4) Complete Normal Progress Waivers before Term Off

Normal progress waivers may be submitted during the season the student-athlete is not enrolled. (E&E Committee 5/77)

5) Summer Schedule

The summer months are the most difficult time for the E&E Committee to render waiver decisions. It may take longer to complete the entire procedure and reach a decision. (E&E Committee 1/77)

c. Participation Prior to the Waiver Decision

An institution may not permit an ineligible student-athlete to participate in a sport before a decision granting waiver

has been rendered. (E&E Committee 10/77)

d. Process of Final Appeal

If a waiver request is forwarded to an Appeals Board for action, the period of time taken to complete this task is uncertain. Every attempt is made to complete the task as expeditiously as possible when denial of access to a national championship may be a result of the denial or if a student may be declared ineligible to participate. Generally, however, the process takes from four to six weeks for a decision to be rendered by the Appeals Board. (E&E 1/78)