Tom **BRANDS**, Plaintiff,

v.

**SHELDON COMMUNITY SCHOOL, Defendant.**

No. C 87–4015.

United States District Court, N.D. Iowa, W.D.

Feb. 18, 1987.

John Samore, Sioux City, Iowa, for plaintiff.

Thomas Whorley, Keith Thompson Sheldon, Iowa, for defendant.

DONALD E. O'BRIEN, Chief Judge.

This matter comes to the Court on plaintiff's motions for a temporary restraining order or preliminary injunction. Upon the filing of this action at 3:37 p.m. on Friday,

February 13, the Court held an immediate hearing. At 8:18 p.m. that evening, the Court entered a temporary restraining order effective until 1:00 p.m. the following Monday, February 16, when a second hearing was held. For the reasons stated below, the Court declines to enter a second restraining order or preliminary injunction.

## FINDINGS OF FACT

The plaintiff is a student at Sheldon Community High School. As a member of his school's wrestling team, he has amassed a nearly perfect record in four years of competition, and is a defending state champion. His performance and the equally outstanding performance of his twin brother have attracted the attention of the state media and college coaches (Exhibit 14), and each brother hopes to attend college on a wrestling scholarship.

The events leading to this decision began on January 25, 1987. The plaintiff has been understandably reluctant to give his account of what took place at his home that day, but the Sheldon Community School Board ultimately concluded that the plaintiff "as well as three other male youths engaged in multiple acts of sexual intercourse with a sixteen-year-old female student of the Sheldon Community School District...." (Exhibit 12 at 5). The Court makes no judgment as to whether a preponderance of the evidence, clear and convincing evidence, or evidence beyond a reasonable doubt supports this finding.

As rumors about this incident spread throughout Sheldon Community High School, Principal David Kapfer began an investigation and interviewed the plaintiff and other parties rumored to have been involved. On February 4, the plaintiff and his mother were sent letters from Kapfer declaring the plaintiff ineligible for the remainder of the wrestling season. (Exhibits 2 and 3). These letters stated that he "committed a breach of discipline by engaging in conduct which interfered with the maintenance of school discipline and by engaging in behavior which was antagonistic to the rights of (name redacted) [1] to attain her education." The letters further stated that he violated Section III of the Discipline Policy because his conduct on January 25 was "detrimental to the best interests of the Sheldon Community School District." In a section of the letter to the plaintiff, Kapfer stated that the plaintiff's conduct "was a breach of discipline in that you: 1) engaged in bullying behavior; 2) committed an assault on (same name) in that you took acts against her resulting in physical contact which was insulting and offensive and which caused her emotional injury; 3) willfully injured (same name) by doing an unjustified act causing her serious emotional and mental injury; and 4) participated in multiple acts of sexual intercourse involving (same name) which took place on January 25, 1987." (Exhibit 2). The Court makes no judgment as to whether a preponderance of the evidence, clear and convincing evidence, or evidence beyond a reasonable doubt supports these charges.

The period of ineligibility declared by the principal included the dates of the sectional, district and state wrestling tournaments. Thus, any reinstatement which would preserve the plaintiff's chance to again become a state champion would have to occur before 8:30 a.m. on February 14, when weigh-ins would take place for the sectional tournament.

Following an appeal to Superintendent Jerry Peterson on February 5 (Exhibit 4), Peterson sent letters to the plaintiff and his mother affirming the principal's decision which were nearly identical to the February 4 letters. These letters were dated February 9. (Exhibits 5 and 6). On February 10, the plaintiff and his mother requested a closed hearing before the School Board (Exhibit B) which began Thursday morning, February 12, and ended late that night. The Board deliberated for several hours on February 12 and 13 before reaching a decision which affirmed the administration's decision. Extensive findings of

---

1. The name of the minor female involved was used in all letters to the plaintiff and his mother, but it has been redacted by agreement of the parties in submitting these documents as exhibits.

fact were made by the Board. (Exhibit 12). The complaint and motions presently before this Court were filed within three hours of the Board's decision.

It became clear at this Court's February 13 hearing that the Court could not fairly consider all of the evidence admitted in time to fully resolve this matter prior to weigh-ins.[2] This dilemma significantly increased the risk of irreparable harm, and for this reason, the Court entered a temporary restraining order which permitted the plaintiff to compete and advance in the sectional tournament. The TRO expired at the beginning of the February 16 hearing.

### CONCLUSIONS OF LAW

■ Whether a temporary restraining order or preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict upon other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981) (en banc). For the reasons stated below, the Court finds that the probability that the plaintiff will succeed on the merits is not great enough to satisfy that element of the *Dataphase* test, even if the plaintiff's allegations of irreparable harm, a favorable balance of interests and the public interest were accepted as true. Such relief is therefore improper.

■ The plaintiff asserts that he has been deprived of five constitutional rights—his Fourteenth Amendment rights to equal protection, substantive due process and procedural due process, his Eighth Amendment right to be free from cruel and unusual punishment, and his Sixth Amendment right to counsel. The equal protection claim must be rejected because the plaintiff has not alleged that he was treated differently because of his race, ethnicity, gender, or any other suspect classification, and his interests in wrestling or receiving a college scholarship are not among the small set of rights fundamental enough to warrant separate protection under the equal protection clause. *San Antonio Ind. School District v. Rodriguez,* 411 U.S. 1, 29–39, 93 S.Ct. 1278, 1294–1300, 36 L.Ed.2d 16 (1973). Likewise, the Eighth Amendment claim must be rejected because school discipline does not implicate Eighth Amendment concerns, as the Supreme Court held in *Ingraham v. Wright,* 430 U.S. 651, 668, 97 S.Ct. 1401, 1410, 51 L.Ed.2d 711 (1977). Because the Constitution limits the scope of Sixth Amendment rights to "all criminal prosecutions," U.S. Const.Amend. VI, that argument must be rejected. If any rights were violated, they can only be substantive or procedural due process rights.

### *Procedural Due Process*

■ The majority of the plaintiff's complaints—including those concerning the vagueness of the school's standard of conduct, the School Board's reliance upon hearsay, the timing of his hearing, and the sufficiency of the evidence—are most relevant to his right to procedural due process. To consider those complaints, however, the Court must first find that the plaintiff is being deprived of liberty or property by the defendant. If not, no procedural protections were "due" to the plaintiff under the Constitution. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The Supreme Court has consistently held that the existence of a protected liberty or property interest does not depend upon the seriousness of the loss the plaintiff would suffer as a result of the government's action. "[T]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake." *Smith v. Organization of Foster Families,* 431 U.S. 816, 841, 97 S.Ct. 2094, 2107, 53 L.Ed.2d 14 (1977); *Roth,* 408 U.S. at 571, 92 S.Ct. at 2706. The critical question is whether the

---

**2.** The evidence included five to six hours of tape recordings made during the February 12 hearing before the School Board. (Exhibit 1000).

plaintiff has a *legitimate* claim that he is *entitled* to participate and not a "mere expectation" that he will be permitted to do so. *Roth, id.*

A clear majority of courts addressing this question in the context of interscholastic or intercollegiate athletics has found that athletes have no legitimate entitlement to participate. *See, e.g., Colorado Seminary v. NCAA,* 570 F.2d 320 (10th Cir. 1978); *Hamilton v. Tennessee Secondary School Athletic Ass'n,* 552 F.2d 681 (6th Cir.1976); *Mitchell v. Louisiana High School Athletic Ass'n,* 430 F.2d 1155 (5th Cir.1970). In *In re U.S. Ex. Rel. Missouri State High School Activities Association,* 682 F.2d 147 (8th Cir.1982), the Eighth Circuit stated that "a student's interest in participating in a single year of interscholastic athletics amounts to a mere expectation rather than a constitutionally protected claim of entitlement." *Id.* at 153 n. 8, *quoting Walsh v. Louisiana High School Athletic Association,* 616 F.2d 152, 159–61 (5th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981).

In *Boyd v. Bd. of Directors of McGehee School District,* 612 F.Supp. 86 (E.D.Ark. 1985), a court recognized a property interest where the plaintiff's interest "was something more than a desire to participate in a single season of interscholastic athletics without the belief and desire to realizing any tangential benefits accruing to him in the future." *Id.* at 93. That court found that the plaintiff's "continued status as a member of the McGehee High School football team during his last year was very important to [his] development educationally and economically in the future." *Id.* Yet the fact that this plaintiff's performance in the tournament may help him receive a college scholarship does not change the nature of the interest at stake; it merely raises its value while leaving the degree of entitlement unchanged.

Once awarded, a college scholarship may give rise to a property interest in its continuation. *Hall v. University of Minnesota,* 530 F.Supp. 104 (D.Minn.1982).[3] "But there is not automatic entitlement to a college education." *Fluitt v. University of Nebraska,* 489 F.Supp. 1194, 1203 (D.Neb. 1980). When scholarships are awarded at the discretion of a college coach, and such discretion has not yet been exercised, no property interest in the receipt of a scholarship can exist, and the plaintiff cannot invoke his expectation that he would earn a scholarship at the state tournament in order to claim a property interest in wrestling there. *See id.*

If any property interest of the plaintiff is involved in this case, it is a property right created by the defendant's own Disciplinary Policy and Administrative Rules. When a government must follow mandatory laws or regulations which limit its discretion to make a decision in any way or for any reason, those laws or regulations can create a property right which is deprived if those regulations are not followed. *See Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983). However, the plaintiff was not deprived of this right because (1) the basis for the defendant's action was a permissible basis for this sanction under Sections III and V(E) of the Disciplinary Policy, (2) the procedures in part IV of the Administrative Rules were followed, and (3) the sanction chosen was authorized in § 9.14(5) of Board Policy 503.6.[4]

■ Even if this Court were to recognize a protected interest in participation, the Court is satisfied that the plaintiff received all process due to him. The plaintiff and his mother were notified of the charges against him and were told of opportunities

---

**3.** In *Hall,* a college basketball player lost his eligibility to play and to attend classes when he was refused admission to a degree program. Thus, although that court ordered the university to restore his eligibility and scholarship and permit him to enroll, the circumstances of that case made it more like an expulsion case than a non-admission case or a case like this one.

**4.** In so ruling, the Court refuses to adopt the plaintiff's interpretation of these rules, which would prevent the school from suspending students from extracurricular activities for violations of the Disciplinary Rules which are not separately described in § 9.14(5). This reading would be inconsistent with the clear meaning of Disciplinary Rule III(E).

for appeal. (Exhibits 2 through 6). The plaintiff was given an opportunity to explain his side of the story to the principal prior to the suspension. (Hearing Tape, Side 2, at 243). He was given a five- to six-hour evidentiary hearing within ten days of the initial suspension, which was also early enough to permit the Board to reverse the administration's decision before the plaintiff would be precluded from participating in the state tournament. Evidence was presented on the administration's behalf by an independent attorney. The plaintiff was represented by legal counsel, who called several witnesses and rigorously cross-examined the administration's witnesses. All witnesses were sworn prior to their testimony.

The plaintiff objects that the description of the incident presented to the Board was based upon hearsay, and that the administration did not present testimony from anyone who was present when it took place. This claim is supported in the hearing record. However, the Due Process Clause does not require courtroom standards of evidence to be used in administrative hearings. *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 143, 60 S.Ct. 437, 441, 84 L.Ed. 656 (1940).

As long as a decision rests upon "some evidence", due process may have been satisfied. *Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 2770, 86 L.Ed.2d 356 (1985); *Thompson v. Louisville,* 362 U.S. 199, 206, 80 S.Ct. 624, 629, 4 L.Ed.2d 654 (1960); *Schware v. Board of Bar Examiners,* 353 U.S. 232, 246–247, 77 S.Ct. 752, 760–761, 1 L.Ed.2d 796 (1957); *Vajtauer v. Commissioner of Immigration,* 273 U.S. 103, 106, 47 S.Ct. 302, 304, 71 L.Ed. 560 (1927). Hearsay which has a "rational probative force" can constitute substantial evidence, which is a higher standard than "some evidence". *Mobile Consortium of CETA v. U.S. Department of Labor,* 745 F.2d 1416, 1419 n. 2 (11th Cir.1984); *School Board of Broward County v. H.E.W.,* 525 F.2d 900, 906 (5th Cir.1976). Absent direct contradictory evidence, hearsay could be relied upon. *Broward County,* 525 F.2d at 907; *Cohen v. Perales,* 416 F.2d 1250, 1251 (5th Cir.1969), *rev'd on other grounds,*

*Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). These standards apply even though the School Board lacked subpoena power.

The inability to procure direct testimony, although it does not increase the probative force of the hearsay introduced, does demand that we be more flexible by allowing an administrative determination to rest on the only available evidence. *Broward County,* 525 F.2d at 907.

In this case there appears to be little or no evidence in the hearing record directly contradicting the Board's hearsay-based finding that the plaintiff "as well as three other male youths engaged in multiple acts of sexual intercourse with a sixteen year old female student of the Sheldon Community School District on or about January 25, 1987." (Exhibit 12 at 5). The factual disagreement primarily concerned the effect of that incident upon the school and the female. Reliable and credible evidence was presented by Instructor Patti Thayer about the disruptive effect upon the school, and expert testimony was presented concerning the potential effect of such acts upon the female involved and upon student attitudes concerning sexuality, women and rape. While the Board was required to speculate about whether the female involved would react in the same way as the hypothetical female in the expert's answer (Hearing Tape, Side 5 at 357–500), that is not enough to prevent the testimony from constituting "some evidence." Further, it does not require experts to clearly demonstrate that such acts would, as it has in Sheldon, disrupt a good portion of the town and not just the school.

The plaintiff also claims the standard in Disciplinary Policy Section III (Exhibit 1 at 6) is too vague. However, as Section III relates to this plaintiff's conduct, it does not appear to be significantly more vague than the standards upheld in *Parker v. Levy,* 417 U.S. 733, 752–761, 94 S.Ct. 2547, 2559–2564, 41 L.Ed.2d 439 (1974). While the plaintiff states that the evidentiary hearing should have preceded the suspension of eligibility, *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975),

suggests otherwise. The plaintiff also argues that the hearing was held *too soon* for him to properly prepare for it. The Court recognizes that the hearing was expedited at the request of the plaintiff's first counsel (Exhibit 10), and finds that a *later* hearing might have been a deprivation of due process under *Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979). The Court finds that the remainder of the plaintiff's procedural complaints are either unsupported in the record or legally insignificant. For all of these reasons, the Court finds that the plaintiff's procedural due process rights were respected.

### Substantive Due Process

The plaintiff can show that his right to substantive due process was denied if the Board's decision was arbitrary or capricious, *Littlefield v. City of Afton,* 785 F.2d 596, 607 (8th Cir.1986); or if it violated one of the substantive due process rights such as the right to privacy, which cannot be deprived no matter how much procedural protection is used. *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

█ The Court is persuaded that the Board's decision was not arbitrary or capricious. The Board's objectives were legitimate. The Iowa Supreme Court has described the set of permissible school board objectives in this area in broad, sweeping terms. *Bunger v. Iowa High School Athletic Association,* 197 N.W.2d 555, 564–65 (Iowa 1972). "To some extent at least, school authorities may base disciplinary measures on immoral acts or acts definitely contrary to current mores." *Id.* at 565. The *Bunger* court also held that:

> The present case involves the advantages and enjoyment of an extracurricular activity provided by the school, a consideration which we believe extends the authority of a school board somewhat as to participation in that activity. The influence of the students involved is an additional consideration. Standout students, whether in athletics, forensics, dramatics, or other interscholastic activities, play a somewhat different role from the rank and file. Leadership brings additional responsibility. These student leaders are looked up to and emulated. They represent the school and depict its character. We cannot fault a school board for expecting somewhat more of them as to eligibility for their particular extracurricular activities.

*Id.* at 564.

The means chosen to achieve their objectives were not arbitrary or capricious. As the Nebraska Supreme Court found in a similar case involving alcohol use by athletes who were then suspended from a team:

> The rule involved in this case, even though the penalty of expulsion for the season might be deemed severe by some persons, clearly serves a legitimate rational interest and directly affects the discipline of student athletes. It cannot be said that the prescribed penalty was an arbitrary and unreasonable means to attain the legitimate end of deterrence of the use of alcoholic liquor by student athletes.

*Braesch v. DePasquale,* 200 Neb. 726, 265 N.W.2d 842, 846 (1978).

The plaintiff argues that he should not have been given a penalty more severe than penalties allegedly given in the past to other students for conduct the plaintiff considers to be more serious than his own. The record adequately demonstrates that the school's treatment of those students involved to the same degree in this incident could hardly have been more consistent; even the female involved was suspended from extracurricular activities. To go further and evaluate the Board's "consistency" across different times and different factual settings would require the Court to substitute its judgment concerning the relative seriousness of different acts for that of the School Board; the "arbitrary or capricious" standard of review is too narrow to authorize this kind of analysis. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

█ During the February 16 hearing, the plaintiff sought to introduce a state-

ment one member of the School Board made after the Board's hearing but before the end of deliberations which purported to show a predisposition to affirm the suspension. However probative this statement may be, the Court cannot consider it. When a board has made formal findings, a court may not look beyond those findings to question the integrity of decision-makers or the decision-making process without a "strong showing of bad faith or improper behavior." *Overton Park,* 401 U.S. at 420, 91 S.Ct. at 825; *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941). No such showing has been made here.

■ In his testimony before the School Board, the plaintiff would not admit or deny that the incident took place because he believed it was a private matter. (Hearing Tape, Side 9 at 485).[5] A limited right to privacy is protected by the Due Process Clause. *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). However, that right does not keep the state and its instrumentalities from regulating private sexual conduct. *Bowers v. Hardwick,* —— U.S. ——, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986); Note, *Fornication, Cohabitation and the Constitution,* 77 Mich. L.Rev. 252 (1978).[6] The Board's findings indicate that it was not merely trying to impose its moral standard upon the plaintiff; the Board found that his acts injured another student and disrupted the school. These are legitimate school board concerns. *Tinker v. Des Moines Independent School District,* 393 U.S. 503, 513, 89 S.Ct. 733, 740, 21 L.Ed.2d 731 (1969). *Cf. Fisher v. Snyder,* 476 F.2d 375, 378 (8th Cir.1973). Moreover, the school has not regulated the plaintiff as a student; by revoking his eligibility without suspending or expelling him, it has regulated him as a representative of the school, and has chosen a sanction which limits his ability to represent the school without limiting his basic rights as a student. *Cf. Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). For these reasons, the Court finds that whatever right the plaintiff has to sexual privacy after *Bowers* was not violated in this case, and the last possible ground for finding a likelihood that his substantive due process rights were violated is rejected.

### CONCLUSION

The Court finds that the likelihood the plaintiff can prove that his constitutional rights were violated is not great enough to warrant a temporary restraining order or preliminary injunction—nothing more and nothing less. The Court neither approves nor disapproves of the defendant's action, for that particular question has never been before it. However, it is the fervent hope of this judge that if or when this legal dispute is over, the parties and their respective supporters in the community have not burned so many bridges that a mutually beneficial reconciliation cannot be reached.

IT IS HEREBY ORDERED that the plaintiff's motions for a temporary restraining order or preliminary injunction are denied.

---

5. It should be noted that the plaintiff admits that a fellow wrestler was present when the incident took place, and this individual has admitted that he "was involved in an incident with (female's name redacted) on Sunday night Jan. 25, 1987." (Exhibit 13).

6. *Bowers* may not have undermined all earlier decisions recognizing privacy rights of consenting adults engaged in private sexual conduct. *See, e.g., State v. Pilcher,* 242 N.W.2d 348 (Iowa 1976); *Erb v. Iowa State Board of Public Instruction,* 216 N.W.2d 339 (Iowa 1974). But in light of the public school system's responsibility to "inculcate the habits and manners of civility" in students, *Bethel School District v. Fraser,* —— U.S. ——, ——, 106 S.Ct. 3159, 3162, 92 L.Ed.2d 549 (1986), the Court is hesitant to grant high school students the same degree of protection afforded adults.